## TENNESSEE *v.* SNEED.

1. The legislature of a State does not impair the obligation of a contract by enlarging, limiting, or altering the modes of proceeding for enforcing it, provided that the remedy be not withheld, nor embarrassed with conditions and restrictions which seriously impair the value of the right.

2. The act of the legislature of Tennessee, providing that there shall be no other remedy in any case of the collection of revenue, or attempt to collect revenue illegally, or attempt to collect revenue in funds only receivable by a collector of taxes under the law, the same being other or different funds than such as the tax-payer may tender or claim the right to pay, than by paying the tax under protest, and within thirty days thereafter suing the collector to recover it, the judgment, if for the tax-payer, to be paid in preference to other claims on the treasury, does not leave a party without an adequate remedy for asserting his right to pay his State taxes in certain bills, made receivable therefor under the charter granted to the Bank of Tennessee in the year 1838, but which bills the collector refused to accept.

ERROR to the Supreme Court of the State of Tennessee.
The facts are stated in the opinion of the court.

*Mr. Robert McPhail Smith* and *Mr. Philip Phillips* for the plaintiff in error.

*Mr. Joseph B. Heiskell*, Attorney-General of Tennessee, *contra*.

MR. JUSTICE HUNT delivered the opinion of the court.

In the month of March, 1874, Bloomstein, the relator, presented his petition to the State Circuit Court sitting at Nashville, Tenn., in which he stated that he was the owner of certain real and personal estate, which was assessed for State taxes in the year 1872 to the amount of $132.60; that he tendered to Sneed, who was collector of taxes for Davidson County, in payment of said taxes, the amount thereof in "funds receivable by law for such purposes;" that the collector refused to receive the same, but issued a warrant to his deputy to collect the amount claimed; that he has ever since been ready to make such payment, and now brings said funds into court to abide the action with respect thereto; that said funds consist of $2.60 in legal-tender currency of the United States, and $130 in bills of the Bank of Tennessee, which were issued subsequently to May 6, 1861, although some of them bear an earlier date; that the bills tendered were originally made payable in gold or silver coin, and were embraced within the twelfth section of the act chartering said bank. He prayed for an alternative writ of *mandamus* to compel the collector to receive the said bills in payment of such taxes, or to show cause to the contrary.

To this writ the defendant, in answer, showed, among others, the following causes why the writ should not issue : —

1. That the suit is expressly prohibited by the act of the General Assembly of the State passed Feb. 21, 1873, c. 13, sect. 2.
2. That it is prohibited by the act (c. 44) of the same year.
3. That the receipt of such bank-notes in payment of taxes was prohibited by the Constitution of the State of Tennessee of 1865   4. That no such action lay at common law to enforce action by an officer in defiance of the legislative command.
8. That the notes were issued in aid of the late war against the United States.

The petition having been dismissed, the case was thereupon

taken to the Supreme Court of the State. On the 26th of May, 1875, a judgment of affirmance was rendered.

It is from this judgment that the writ of error to this court is brought.

The bank in question was chartered in the year 1838, and its charter contained, as its twelfth section, the following provision : —

"SECT. 12. Be it enacted, that the bills or notes of the said corporation originally made payable, or which shall have become payable, on demand, in gold or silver coin, shall be receivable at the treasury, and by all tax-collectors and other public officers, in all payments for taxes or other moneys due the State."

The judgment of the Supreme Court declared that the present proceeding was, virtually, a suit against the State, and that it was not maintainable prior to the act of 1855, which act was carried into the Code as sect. 2807. By this act it was provided that suits might be brought against the State "under the same rules and regulations that govern actions between private persons," and that process commencing the same might be served upon the attorneys-general of the several districts. This act was repealed in 1865, many years before the commencement of this proceeding, and again in 1873, by the acts presently to be mentioned. We have in the present action a decision of the Supreme Court of the State upon its own statutes and modes of proceeding, to the effect, 1st, that a writ of *mandamus*, in a case like the present, is a proceeding against the State ; and, 2d, that it cannot be sustained in this case.

On the 28th of February, 1873, the legislature of Tennessee enacted " that no court has, or shall hereafter have, any power, jurisdiction, or authority to entertain any suit against the State, or against any officer of the State, acting by authority of the State, with a view to reach the State, its treasury funds or property ; and all such suits now pending, or hereafter brought, shall be dismissed as to the State or such officer, on motion, plea, or demurrer of the law officer of the State, or counsel employed by the State."

On the 21st of March, 1873, it enacted " that in all cases in which an officer, charged by law with the collection of revenue

/

due the State, shall institute any proceeding, or take any steps for the collection of the same, alleged or claimed to be due by said officer from any citizen, the party against whom the proceeding or step is taken shall, if he conceives the same to be unjust or illegal, or against any statute or clause of the Constitution of the State, pay the same under protest; and, upon his making said payment, the officer or collector shall pay such revenue into the State treasury, giving notice at the time of payment to the comptroller that the same was paid under protest; and the party paying said revenue may, at any time within thirty days after making said payment, and not longer thereafter, sue the said officer having collected said sum, for the recovery thereof. And the same may be tried in any court having the jurisdiction of the amount and parties; and, if it be determined that the same was wrongfully collected, as not being due from said party to the State, for any reason going to the merits of the same, then the court trying the case may certify of record that the same was wrongfully paid and ought to be refunded; and thereupon the comptroller shall issue his warrant for the same, which shall be paid in preference to other claims on the treasury."

Sect. 2 of the act provides "that there shall be no other remedy, in any case of the collection of revenue, or attempt to collect revenue illegally, or attempt to collect revenue in funds only receivable by said officer under the law, the same being other or different funds than such as the tax-payer may tender, or claim the right to pay, than that above provided; and no writ for the prevention of the collection of any revenue claimed, or to hinder or delay the collection of the same, shall in any wise issue, either injunction, *supersedeas*, prohibition, or any other writ or process whatever; but in all cases in which, for any reason, any person shall claim that the tax so collected was wrongfully or illegally collected, the remedy for said party shall be as above provided, and in no other manner."

The act of March 25, 1873, provides "that the several tax-collectors shall receive, in discharge of the taxes and other dues to the State, bank-notes of the Bank of Tennessee, known as the old issue, warrants on the treasury legally outstanding, gold, silver, national bank-notes, and nothing else."

It is said that the acts of 1873, to which reference is made, are laws impairing the obligation of the contract contained in the twelfth section of the bank charter. This is done, it is said, not by a direct infraction of the obligation, but by placing such impediments and obstructions in the way of its enforcement, by so impairing the remedies, as practically to render the obligation of no value. This is the only point in the case involving a question of Federal jurisprudence, and the only one that it is necessary for us to consider. The question discussed by Mr. Justice Swayne, in *Walker* v. *Whitehead* (16 Wall. 314), of the preservation of the laws in existence at the time of the making of the contract, is not before us. The claim is of a subsequent injury to the contract.

There are, no doubt, many cases holding that the remedy may be so much impaired as to affect the obligation of the contract. In *Webster & Mann* v. *Rose* (6 Heisk. (Tenn.) 93), a stay-law was decided to be unconstitutional. In *Blair* v. *Williams* (4 Litt. (Ky.) 34), the same was held of a law extending the time of a replevin beyond that in existence when the contract was made.

In *Malony* v. *Fortune* (14 Iowa, 417), and in *Cargill* v. *Power* (1 Mich. 369), an extension of time for the redemption of a pre-existing mortgage was held to be unconstitutional.

In *Willard* v. *Longstreet* (2 Dougl. (Mich.) 172), a law forbidding the sale of property on execution for less than two-thirds of its appraised value was held to be unconstitutional as to pre-existing contracts.

In *Walker* v. *Whitehead (supra)*, it is said, " Nothing is more material to the obligation of a contract than the means of its enforcement. The ideas of validity and remedy are inseparable, and both are parts of the obligation which is guaranteed by the Constitution against impairment."

These are the authorities quoted to sustain the plaintiff's theory, and the list might easily be enlarged.

On the other hand, our own reports and those of the States are full of cases holding that the legislature may alter and modify the remedy to enforce a contract without impairing its obligation. The case of *Sturges* v. *Crowninshield* (4 Wheat. 122), is among the first of the class where the question arose upon the

abolition of the right of imprisonment of the debtor as a means of compelling payment of his debt. *Mason* v. *Haile* (12 Wheat. 370) was a case of the same class. Mr. Justice Thompson says: " Imprisonment of the debtor . . . may be allowed as a means of inducing him to perform his contract; but a State may refuse to inflict this punishment, . . . and leave the contract in full force. Imprisonment is no part of the contract, and simply to release the prisoner does not impair its obligation."

On the general subject, and for numerous illustrations, reference is made to the following cases, which it is not necessary to examine in detail: *Bronson* v. *Kinzie*, 1 How. 311; *Von Hoffman* v. *City of Quincy*, 4 Wall. 535; *Bruce* v. *Schuyler et al.*, 9 Ill. 221, in each of which a large number of cases is collected.

If a particular form of proceeding is prohibited, and another is left or is provided which affords an effective and reasonable mode of enforcing the right, the obligation of the contract is not impaired. *Bronson* v. *Kinzie, supra; Huntzinger* v. *Brock*, 3 Grant's Cases (Pa.), 243; *Evans* v. *Montgomery*, 4 Watts & S. (Pa.) 218; *Read* v. *Frankfort Bank*, 23 Me. 318.

The rule seems to be that in modes of proceeding and of forms to enforce the contract the legislature has the control, and may enlarge, limit, or alter them, provided that it does not deny a remedy, or so embarrass it with conditions and restrictions as seriously to impair the value of the right. *Bronson* v. *Kinzie, supra.*

If we assume that prior to 1873 the relator had authority to prosecute his claim against the State by *mandamus*, and that by the statutes of that year the further use of that form was prohibited to him, the question remains, whether an effectual remedy was left to him or provided for him. We think the regulation of the statute gave him an abundant means of enforcing such right as he possessed. It provided that he might pay his claim to the collector under protest, giving notice thereof to the comptroller of the treasury; that at any time within thirty days thereafter he might sue the officer making the collection; that the case should be tried by any court having jurisdiction, and, if found in favor of the plaintiff on the merits, the court should certify that the same was wrongfully

paid and ought to be refunded, and the comptroller should thereupon issue his warrant therefor, which should be paid in preference to other claims on the treasury.

This remedy is simple and effective. A suit at law to recover money unlawfully exacted is as speedy, as easily tried, and less complicated than a proceeding by *mandamus*. Every attorney knows how to carry on the former, while many would be embarrassed by the forms of the latter. Provision is also made for prompt payment of the amount by the State, if judgment is rendered against the officer on the merits.

We are not cited to any statutes authorizing suits to be brought against a State directly, and we know of none. In a special and limited class of cases, the United States permits itself to be sued in the Court of Claims; but such is not the general rule. In revenue cases, whether arising upon its internal revenue laws or those providing for the collection of duties upon foreign imports, it adopts the rule prescribed by the State of Tennessee. It requires the contestant to pay the amount as fixed by the government, and gives him power to sue the collector, and in such suit to test the legality of the tax. There is nothing illegal or even harsh in this. It is a wise and reasonable precaution for the security of the government. No government could exist that permitted the collection of its revenues to be delayed by every litigious man or every embarrassed man, to whom delay was more important than the payment of costs.

We think there is no ground for the assertion that a speedy and effective remedy is not provided to enforce the claim set up by the plaintiff. This is the only question properly before us, and we are of the opinion that it presents no ground for reversing the judgment of the court below.

The other important questions discussed in the opinion of the court below and argued by the counsel it is not necessary here to examine; they do not arise at this time.

*Judgment affirmed.*