HEARD NOVEMBER TERM, 1878.

CASE No. 688.

THE STATE, EX REL. DOUGLAS & JACKSON, v. P. C. GAILLARD, COUNTY TREASURER.

An act of the legislature, approved December 24th, 1878, (16 *Stat.* 785), provided a mode by which alone should be determined the right of a taxpayer to discharge taxes due the state in funds, currency or bank-bills not authorized by the tax act to be received in payment of such taxes, and deprived the courts of the right to adjudicate the question under proceedings by *mandamus: Held*—

1. That the deprivation was not in conflict with Article IV., Section 4, of the state constitution; but that the legislature had the power to determine to what cases the judicial power conferred by this section of the constitution should extend. *State* v. *County Treasurer*, 4 *S. C.* 520, followed, McIVER, A. J., assenting only because of the former adjudication ; HASKELL, A. J., concurring in the result, upon the ground that the act in question afforded an adequate remedy.

2. That taking away the remedy by *mandamus* did not impair the obligation of the contract made by the State of South Carolina with holders of the bills of the bank of the State of South Carolina.*

* This case was carried up to the Supreme Court of the United States, where the judgment of this court was affirmed by a divided court. The judgment of the Supreme Court of the United States was rendered March 2d, 1880.—RE-PORTER.

This was an original application to the Supreme Court, by Douglass & Jackson, for a rule requiring P. C. Gaillard, county treasurer for Charleston county, to show cause why a writ of *mandamus* should not issue to compel him, as county treasurer, to receive certain bills of the Bank of the State of South Carolina, tendered by them, in payment of their taxes. The respondent then moved to discharge such rule to show cause, for the reason that the right to issue a writ of *mandamus* in such cases had been taken away from the courts by the provisions of an act of the legislature of this state, approved December 24th, 1878, entitled " An act to facilitate the collection of taxes."

*Messrs. Simonton & Barker,* for relators.

*Messrs. De Saussure & Son, Youmans,* Attorney-General, and *J. H. Rion,* contra.*

March 3d, 1879. The opinion of the court was delivered by

WILLARD, C. J. A rule has been made requiring the respondent to show cause why a writ of *mandamus* should not issue, compelling him, as county treasurer, to receive the bills of the bank of the state in payment of taxes due the state by the relators. The respondent now moves to discharge the rule to show cause, on the ground that, by a recent statute of this state, the right to resort to such a remedy in such cases has been taken away. The question is, then, whether the respondent shall be held to make return to such rule, or the rule be discharged. The grounds upon which the relator claims that the respondent should make return to the rule are :

1. That this court has a constitutional jurisdiction to issue the writ in all cases in which it was issuable at the adoption of the constitution in 1868, which cannot be taken away by any act of the legislature ; and, 2d, that the rule seeks to enforce a contract between the State of South Carolina and the relators, by which the state bound itself to permit the relator to discharge its taxes, chargeable against them, by tender and payment in the bills of the bank of the state ; and, therefore, that the act of legislature

---

* The reporter has not been furnished with the arguments in this cause.

attempting to take away the remedy, by *mandamus* for enforcing such duty specifically, is invalid, under the constitution of the United States, as tending to impair the obligation of a contract. It must be assumed, for the purposes of this preliminary motion, that the right of the relators rests upon a contract with the state; whether such is the actual fact cannot be determined until the respondent shall make return, and it is the object of this motion to ascertain whether he is bound to make such a return. The act in question (16 *Stat.* 785) contains the following provision: "And no writ of *mandamus* shall be granted or issued from any court directing or compelling the receipt for taxes of any funds, currency or bank-bills not authorized to be received for such taxes." It is conceded that the act under which the tax was levied did not authorize bills of the bank of the state to be received in discharge of taxes levied under it. The act containing the foregoing provision refusing the writ of *mandamus* in such cases, gives a remedy by action applicable to cases where taxes are improperly claimed, very greatly enlarging the common law remedy in such cases. If by law the relators were entitled to discharge the amount of their taxes by the payment of the bills of the bank of the state, then the only remedy they needed to enforce their contract was in their own hands, namely, a tender of such bills. Upon such tender the taxes became satisfied. If, after that, the state should attempt to enforce the same tax as a subsisting right, it would clearly be a case of trespass merely, not involving the contract except incidentally, and the statute remedy would apply to it.

The first question is whether the force and effect of the following language of the constitution, establishing the jurisdiction of the Supreme Court (Article IV., Section 4,) viz.: "The said court shall always have power to issue writs of injunction, *mandamus, quo warranto, habeas corpus,* and such other original and remedial writs as may be necessary to give it a general supervisory control over all other courts in this state," confers on this court power at all times to issue writs of *mandamus* in all cases in which they had been issued at and before the adoption of such constitutional enactment. If so, it was clearly beyond the com-

petency of the legislature to take away such authority, and the act in question must be regarded as invalid.

This question has been substantially decided by this court in the case of *State* v. *County Treasurer*, 4 *S. C.* 520. In that case a construction was put upon similar language contained in Section 15 of the same article conferring jurisdiction on the Circuit Court. The legislature had declared that the writ of prohibition should not be issued to stay the collection of taxes, (14 *Stat.* 367), and it was contended that such enactment was in violation of the constitutional grant of jurisdiction to the Circuit Court, conveyed in these words: "They shall have power to issue writs of *mandámus*, prohibition, *scire facias*, and all other writs which may be necessary for carrying their powers fully into effect." This court then held that this was a grant of judicial power merely, and did not remove from the legal legislature the power of determining to what cases that judicial power should extend. It is clear that the language of the constitution, as it regards the jurisdiction of the Supreme Court, does not essentially differ from that conferring jurisdiction on the Circuit Court, as it regards the present question. We see no ground to change this conclusion. It is clear that no such legislative restriction is expressed, nor is it in any proper sense a necessary implication, as the primary object of the clause, namely, a deposit of judicial authority in the Supreme Court adequate to reach to all the cases that may arise under the laws of the nature embraced in it, is accomplished without the aid of any such implication. No implication made out argumentatively on probable ground is authority for diminishing the full measure of authority imported by the gift of plenary legislative power to the general assembly in Article II., Section 1, of the constitution. We must conclude that the statute on which the respondent relies did not encroach on the constitutional powers of the court in the manner here contended.

The next question is, whether such statute tended to violate the obligations of the contract alleged between the state and the relators by taking away the remedy by *mandamus*. Under the view taken of the present question, it is not necessary to determine whether, under any circumstances, *mandamus* was to be considered a remedy for enforcing the alleged contract obligations,

on the idea that such contract would, from its nature, be self-executing through the legal effect of tender under it. The question will be discussed upon the assumption that it is to be regarded as such a remedy in the contract. All the authorities agree that *mandamus* is not a writ of right, but may, in the exercise of a sound discretion, be refused on the ground of public convenience. *State, ex rel. Shiver,* v. *Comptroller-General,* 4 *S. C.* 185. The limits of that discretion do not appear to be well defined; but it is clear that on general principles it is competent for the legislature to define the conditions on which it shall be granted or withheld consistently with the nature of the writ, as resting in sound discretion. As was said in *McIver* v. *State,* 2 *S. C.* 1, it is now regarded as an ordinary remedy for the relator, in the cases where properly issuable, modifying to some extent the view that was originally taken of it. The question still remains, is it a remedy to which the relators were absolutely entitled at the date of their alleged contract, or as it regards each case that may arise, conditional and dependent on the will of the legislature. If, in general, it belongs to the last-named class, then to make good the relator's position they would have to show, not only that the legislature bound themselves by the alleged contract to allow all existing remedies for its enforcement, according to their recognized nature and characteristics, but that they had actually changed the nature of the writ of *mandamus* so as, in effect, to make it a writ of right in the relator's special favor. Although *mandamus* to enforce a public duty in which an individual has an interest is, when allowable, regarded as a remedy permitted to such individual, yet it not only proceeds in the name of the state, but in the right of the state also. The principle on which the common law allowed remedies upon contracts was compensatory alone. Specific remedies on contracts were afforded by the courts of equity, in certain defined cases, on equitable principles alone.

The present remedy cannot be brought under the last-named class. Obligations imposed upon public officers for the benefit of individuals, were subject to the general rule of the common law, as to the nature of the proper remedies. If a public officer does any act of wrong to the damage of an individual, the in-

jured party has his remedy by an action for damages. If such officer refuses to perform an act, which, by law, he ought to perform, and in which an individual has a special interest, and damage is sustained to such right, an action for such damage lies. In addition to these remedies, the state has an exclusive right to compel specifically the performance of public duties on the part of public officers, or persons exercising public powers, in the interest of good government. Formerly, the king exercised this right through *mandamus*. Considered as a prerogative writ, at present with us, the state stands in the relation in which the king formerly stood. The state thus having a clear judicial remedy in virtue of its sovereignty, and the individual having at common law a right to a compensating remedy merely, it has been the practice for the state to allow the relator to use its right as a means of more effectually enforcing his individual rights. To say that such practice has grown into an absolute and unqualified right in individuals, standing on the same footing as a writ of right, is to deny the principles on which *mandamus* is founded, and to contradict the authority of all the cases in which the nature of the writ has been carefully considered. As the individual cannot claim, in his own right, a specific remedy of this nature, and must depend upon a concession of the right to use a remedy that primarily belongs to the state alone, in virtue of its sovereignty, he is to take that remedy in subordination to the will of the state, which may grant or withhold it at pleasure. This result is not only necessary to satisfy the principles on which the remedy by *mandamus* is administered, but vital to the public welfare. Cases can be readily conceived where allowing the actual exercise of governmental powers to be controverted by an individual might be highly detrimental to the public interest, as, for instance, in times of public danger or disorder. If the specific enforcement of a public act is regarded by the legislature as detrimental to the public interests, there is no sound reason why the state should be compelled to lend its name and right of procedure to an individual in order to give him a better remedy than he is entitled to, on the principles of the common law. There is no authority that compels us to depart so far from the original nature of *mandamus* as to place it among the remedies to

which the relator has a strict right. The results indicated are in harmony with the conclusion of the Supreme Court of the United States, in *Tennessee* v. *Snead*, 96 *U. S.* 69, though the reasonings that lead to that conclusion in that case are derived from a different view of the question.

> The rule should be discharged.

HASKELL, A. J. I concur in the opinion that the act of the legislature impairs no obligation, and that it affords an adequate remedy, and think that (apart from the section inhibiting *mandamus*) good reason why the extraordinary remedy should be refused. I concur in the result.

McIVER, A. J. I concur in the conclusion reached in this case, but desire to state very briefly my reasons. As to the first question discussed by the Chief Justice, viz., whether this court has been deprived of the power to issue a writ of mandamus in a case of this kind, by virtue of the provisions of an act entitled "An act to facilitate the collection of taxes," approved December 24th, 1878, if *it were res integra,* I should feel compelled to dissent, but as I regard the question settled by the case of *State* v. *County Treasurer,* 4 *S. C.* 520, I am bound to yield my opinion to this express adjudication, which, until it is reversed, is as binding upon me as if I agreed to every proposition which it announced.

As the question, however, is one of the gravest importance, involving the boundary line between two of the departments of the government—the legislative and the judiciary—it may not be amiss for me to state, in a very few words, the grounds of my dissatisfaction with the conclusion which this case compels us to adopt. There is no doubt but that, under Article I., Section 2, of the constitution, the legislative power of the state is vested in the general assembly, but there is as little doubt that this is not a grant of complete and absolute legislative power, but only of such as is not forbidden by the terms of the constitution of the United States, or of this state, either in express words or by necessary implication. Hence, when the inquiry arises whether any particular act of the general assembly is within the scope of

the powers granted to that body, the only question necessary to be considered is whether such act is forbidden, either in express terms or by necessary implication, by any provision of the constitution of the United States or this state; for if it is not so forbidden, then such act has the full force and effect of law; but if it is so forbidden, then it has no such force and effect, and must be declared to be unconstitutional, and therefore void. It will not be denied that where certain powers are, by the constitution of the state, vested in one of the departments of the government or any officer of such department, the general assembly is as effectually forbidden from taking away such powers from such department or such officer as if the constitution had in express words forbidden their doing so. Now, by Article IV., Section 4, of the constitution, it is provided, amongst other things, that the Supreme Court "shall always have power to issue writs of injunction, *mandamus*," &c. Observe that the language is *not*, as in some other sections of the constitution, *shall have jurisdiction in cases of mandamus*, &c., which might imply, as is argued in *State* v. *County Treasurer, supra*, that this clause was only designed to give the court *jurisdiction* in this class of cases when they arise under the laws enacted by the general assembly, but do not perpetuate the writs there mentioned, or the power of the court to issue such writs, but the language is, "*shall always have power to issue writs of injunction, mandamus*," &c. This language, it seems to me, confers special powers upon the court in express words, no one of which can be taken away or abridged by the general assembly any more than any other or all of the powers conferred upon the court. By the same section the Supreme Court is invested with appellate jurisdiction "in cases of chancery," and that expression has been held in *Sullivan* v. *Thomas*, 3 *S. C.* 531, to mean all such cases as were cognizable by the courts of equity of the state existing at the adoption of the constitution. For, as was said in that case, at page 546, "It must be premised that the jurisdiction of this court, so far as it was ascertained and fixed by the constitution, is unaffected by the provisions of the code of procedure or any other statute law. Again, the terms employed to mark out that

jurisdiction must be taken in the sense in which they were understood at the time the constitution was adopted."

So it seems to me that when, in this same section, the Supreme Court is invested with the power to issue writs of *mandamus,* it must mean that it should have power to issue such writ in all such cases, as it was the appropriate remedy at the time of the adoption of the constitution ; and that the general assembly has no more authority to deny to the court the right to issue such writ in any case in which it was then the appropriate remedy than it would have to deny its right to hear an appeal in any particular case or class of cases in chancery, or to deny its right to exercise any other of the powers granted to it by the constitution.    If the general assembly has the power to deprive the court of its right to issue the writ of *mandamus* in one particular case, no reason can possibly be suggested why it may not do so in any other case, or in all cases ; and if so, then the result would be that the court would be entirely stripped of one of the powers expressly granted to it by the constitution.    Such a result surely cannot be brought about by an act of the general assembly.

Again, by Article III.; Section 2, of the constitution, the governor is invested with the pardoning power.    I do not see why, upon the same principle that it is held that the general assembly may take away from the Supreme Court the power to issue the writ of *mandamus* in one particular case, they may not take away from the governor the power to grant a pardon in some particular case; and if in one case, then in all, and thus defeat this provision of the constitution altogether.    In the one case the power to issue the writ of *mandamus* is expressly granted, just as in the other the power to grant pardons.

If the general assembly can in the one case limit the power granted by confining its exercise to certain particular cases, I am at a loss to perceive any reason why it may not do so in the other.

It must be conceded that, not only at the time of the adoption of the constitution, but also at the time of the commencement of the proceedings in this case, *mandamus* was the appropriate remedy in the case made by the petition of the relators, and that the Supreme Court then had the power, *conferred by the constitution of the state,* to enforce by writ of *mandamus* the rights

claimed by the relators, if established according to law. What is there now to prevent the court from exercising such power? Will it do to say that the court is prevented from exercising a power expressly conferred by the constitution by an act of the general assembly forbidding the exercise of such power? If so, then, it must necessarily follow that an act of the general assembly has the effect of repealing or abrogating a provision of the constitution, a conclusion which no one will accept. For as the court undoubtedly once had the power in question, and had it by virtue of an express grant in the constitution, and as the only thing relied upon as depriving the court of such power is the act of the general assembly of 24th December, 1878, it must follow either that the court still has the power to issue the writ of *mandamus*, or that this power thus conferred by the constitution has been taken away by the act of the general assembly above mentioned. These views do not by any means involve the idea that the general assembly may not by appropriate legislation regulate the form of the remedy or the practice in administering it. This they may undoubtedly do, as there is nothing in the constitution which can be regarded as prohibiting such an exercise of legislative power. But when it is proposed by a simple act of the general assembly to destroy or abrogate a remedy provided for by the constitution by denying to this court the right to exercise a power expressly granted by the constitution, it is difficult for me to understand how the constitutionality of such legislation can be vindicated. But, as I have said above, I regard this question as concluded by the decision in the case of *State* v. *County Treasurer*, and as long as that decision stands unreversed I am compelled to yield my convictions to an absolute decision of the court of last resort. For this reason, and this alone, I concur in the conclusion reached as to the first question discussed in this case. As to the other question, I am quite content to rest the conclusion upon the reasoning employed in the opinion of the Chief Justice.

Rule discharged.