EDMUND B. HOURIGAN, RELATOR, v. THE TOWNSHIP OF NORTH BERGEN, IN THE COUNTY OF HUDSON, JULIUS L. REICH, HARRY J. STEEPER, PETER F. DALY, HARRY BUESSER, AND PAUL F. CULLUM, BOARD OF COMMISSIONERS OF SAID TOWNSHIP; DAVID LEVEY, ADOLPH BENTZ AND FREDERICK RITTER, MEMBERS OF THE BOARD OF ASSESSORS OF SAID TOWNSHIP, RESPONDENTS.

OAK SECURITIES COMPANY, A CORPORATION, RELATOR, v. THE TOWNSHIP OF NORTH BERGEN, IN THE COUNTY OF HUDSON, JULIUS L. REICH, HARRY J. STEEPER, PETER F. DALY, HARRY BUESSER, AND PAUL F. CULLUM, BOARD OF COMMISSIONERS OF SAID TOWNSHIP; DAVID LEVEY, ADOLPH BENTZ AND FREDERICK RITTER, MEMBERS OF THE BOARD OF ASSESSORS OF SAID TOWNSHIP, RESPONDENTS.

Argued October 26, 1933—Decided April 12, 1934.

For the appellants, *Burke, Sheridan & Hourigan* (*John Milton,* of counsel).

For the respondents, *Nicholas S. Schloeder.*

The opinion of the court was delivered by

HEHER, J. The relators are judgment creditors of respondent township. They applied to the Supreme Court for writs of *mandamus* to compel the taxing authorities of the township to assess and levy, in addition to regular taxes, the amounts due upon the executions issued upon the judgments. The applications were denied. Thereafter the causes were consolidated, and the pleadings moulded, and judgment was entered overruling the demurrer to the return made by respondents to the alternative writ of *mandamus.* Relators appeal from this judgment, and from the order entered in each cause discharging the rule to show cause why a writ of *mandamus* should not issue.

Respondents alleged in the return, and contend *in limine,* that respondent township has a claim substantially exceeding the sums due to relators, growing out of the transaction which furnished the basis for relators' judgments; that suits to recover the sums so claimed to be due, instituted by the township against the Clinton Asphalt Company, are still pending and undetermined in a court of law; that the asphalt company "is the real party in interest and owner of the judgments" obtained by relators, and that execution should be stayed until it has had the opportunity to establish its al-

leged set-off. But this contention is without merit. It is obviously specious. It was not interposed as a defense, nor made the subject of a cross-action, in the suits which resulted in judgments for relators. In each cause there was a judgment by default. Rules directing relators to show cause why their respective judgments should not be opened were discharged by consent. The respondent township will not be permitted, under such circumstances, to interpose, in an effort to defeat relators' efforts to secure satisfaction of their respective judgments, that this alleged claim constitutes a set-off against the judgments.

The return further alleged that, since June, 1932, the municipal finance commission, created by chapter 340 of the laws of 1931 (*Pamph. L.* 1931, *p.* 830), as amended by chapter 236 of the laws of 1932 (*Pamph. L.* 1932, *p.* 519), has functioned in respondent township, and that "by reason of the said statute the present action or proceeding is barred," and that "to comply with the demand of said writ would cause great confusion in the finances and affairs of the said township."

Appellants challenge the constitutionality of the statute, if applicable to their judgments, and specify that it is violative of article 4, section 7, paragraph 3, of the constitution of this state, forbidding the passage of any law impairing the obligation of contracts, or depriving a party of any remedy for enforcing a contract which existed when the contract was made, and article 1, section 10, of the federal constitution, prohibiting the several states from passing any law impairing the obligation of contracts, and, as well, a deprivation of their property without due process of law, and a denial of the equal protection of the laws, in contravention of the fourteenth amendment of the federal constitution. The Supreme Court, properly assuming that the statute is applicable, declined to pass upon its constitutionality, because the finance commission was not a party to the proceeding, and held, that, in any event, the application should be denied, for the reason that the granting of the remedy sought would work great confusion in the financial affairs of the township.

It was not requisite, for the purpose of determining the constitutionality of the statute, that the finance commission be a party to the proceeding. It is not the regularity of any action of the commission that is under attack, but rather the validity of the franchise granted by the legislature. Its very existence is challenged on the ground that the legislature, in attempting to set it up as a state agency for the statutory purpose, violated constitutional precepts. It is merely a nominal, and not a necessary, party to the proceeding. Compare *Oliver* v. *Jersey City,* 63 *N. J. L.* 634, 636.

That the granting of a writ of *mandamus,* in a case such as this, will work confusion in the financial affairs of the municipality, does not justify the denial of the application. It is not a discretionary matter. *Mandamus* is the only remedy of the creditor for the enforcement of his contract. This is a well established doctrine. *Lyon* v. *City of Elizabeth,* 43 *N. J. L.* 158; *Piscataway Township* v. *First National Bank of Dunellen,* 111 *Id.* 412. In *Rahway* v. *Munday,* 44 *Id.* 395, 418, Chief Justice Beasley, speaking for this court, held that the writ of *mandamus,* in such circumstances, is a remedy for enforcing a contract, and that the statute providing that when an execution upon such judgment shall have been served upon the assessor of the municipality, it shall be his duty to assess and levy, in addition to regular taxes, the amount due upon the execution, vests in the judgment creditor a right to have his debt paid from the source specified; that the statute makes no allowance for the pecuniary embarrassments or the insolvency of the corporation, and that the mandate of the act is that, in every case and in all situations, upon the requisite proceedings being taken, the sum due must be assessed and collected. The consequence of a contrary rule would be that, in the exercise of discretion, the Supreme Court could withhold the only remedy of the creditor for the enforcement of his contract. As Chief Justice Beasley pertinently said: "If a judgment should be obtained in an inferior court, and such court should refuse, without legal reason, to issue an execution upon it, the *mandamus* compelling such action would be

as much a remedy for enforcing such contract as would be either the judgment or final process."

We come now to a consideration of the constitutional questions raised. It is firmly established that the remedies for the enforcement of municipal obligations, which existed when the contract was made, must be left unimpaired by the legislature, or, if they are changed, a substantial equivalent must be provided. Where the resource for the payment of the bonds of a municipal corporation is the power of taxation existing when the bonds were issued, any law which withdraws or limits the taxing power, and leaves no adequate means for the payment of the bonds, is forbidden by the federal constitution, and is null and void. *Port of Mobile* v. *Watson,* 116 *U. S.* 305; 6 *Sup. Ct.* 398; 29 *L. Ed.* 620, 626. The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced; by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of these means impairs the obligation. If it tends to postpone or retard the enforcement of the contract, the obligation of the latter is, to that extent, weakened. Any authorization of the postponement of payment, or of means by which such postponement may be effected, is in conflict with the constitutional inhibition. *State of Louisiana* v. *City of New Orleans,* 102 *U. S.* 203; 26 *L. Ed.* 132. In *Walker* v. *Whitehead,* 16 *Wall.* 314, it is said: "Nothing is more material to the obligation of a contract than the means of its enforcement. The ideas of validity and remedy are inseparable, and both are parts of the obligation which is guaranteed by the constitution against impairment." If a particular form of proceedng is prohibited, and another is left or is provided which affords an effective and reasonable mode of enforcing the right, the obligation of the contract is not impaired. The rule is that in modes of proceeding, and of forms to enforce the contract, the legislature has the control, and may enlarge, limit or alter them, provided that it does not deny a remedy, or so embarrass it with conditions or restrictions as seriously to impair the value of the right. *Bronson* v. *Kinzie,* 1 *How.* 311; *Tennessee* v. *Sneed,* 96 *U. S.* 74; 24 *L. Ed.* 610.

The statute, in the instant case, vests in the finance commission power to make provision for the funding or refunding of notes or bonds, or other indebtedness of the municipality, and the interest thereon. It ordains (section 352, as amended) that, so long as the finance commission shall function, no action or proceeding of any kind, by way of *mandamus* or otherwise, shall be brought against the municipality, or any of its officers, for the assessment, levy or collection of taxes by or for the municipality, "except that first, the Supreme Court or a justice thereof may authorize one or more creditors of such municipality to bring and maintain an action or proceeding therefor in the Supreme Court, which shall be brought for the benefit of themselves and all other creditors of such municipality and in which all other creditors of such municipality shall have the right to intervene and assert their claim and * * * may be made parties in such manner and upon such notice as the Supreme Court shall approve; * * *."

Assuming, without deciding, that the statute, in this respect, lessens, in the constitutional sense, the efficacy of the means provided for the enforcement of the contract at the time it was made, it is nevertheless, for the reason to be stated, a valid exercise of the legislative power. It was adopted as an emergency measure. It is therein declared that it is intended "to meet the public emergency arising from a default in the payment of municipal obligations, and the resulting impairment of public credit, requiring intervention by the state to provide for the payment of existing obligations in such a way as to cause the least embarrassment to property owners as taxpayers;" and that it is "remedial in nature, and that the powers granted shall be liberally construed."

In the light of the provisions of the amendment of 1932, the proviso in section 406 of the act of 1931 (*Pamph. L.* 1931, *p.* 835), that the act shall not be construed to "impair in any way the obligations of any contract, or the existing remedies of any creditor of any municipality," loses significance. This and the provisions of the amendment are plainly repugnant. Where there is an irreconcilable conflict, the

amendatory act, being the latest expression of the legislature, will control. The matters superseded by the amendments are to be regarded as eliminated. *Farrell* v. *State,* 54 *N. J. L.* 421; *Van Riper* v. *Essex Public Road Board,* 38 *Id.* 23; *Old Dominion C. M. & S. Co.* v. *State Board of Taxes,* 91 *Id.* 173, 177.

The act confers upon the finance commission, in respect of the municipality's financial affairs, powers somewhat akin to those exercised by receivers of insolvent corporations. It was designed to give support to the tottering municipalities, and to prevent complete collapse and total paralysis of function. It embodies wise and useful provisions tending to restrain and check the reckless levy of taxes, and to promote economy and the orderly conduct of the municipality's affairs. Its primary purpose is to keep intact the corporate structure, and to continue municipal function until rehabilitation can be affected.

This is, of necessity, a proper legislative function, and the rights of creditors, in such a situation, are secondary. It is a proper exercise of the police power. It is a well established doctrine that the interdiction of statutes impairing the obligation of contracts does not prevent the state from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals. While this power is subject to limitations in certain cases, there is wide discretion on the part of the legislature in determining what is and what is not necessary—a discretion which courts ordinarily will not interfere with. *Manigault* v. *Springs,* 199 *U. S.* 473; 26 *Sup. Ct.* 127; 50 *L. Ed.* 274; *Union Dry Goods Co.* v. *Georgia Public Service Corp.,* 248 *U. S.* 372. The proper exercise of the police power is the highest duty of government. The state may, in some cases,

forego the right of taxation, but it can never relieve itself of the duty of providing for the safety of its citizens. This duty, and consequent power, override all statute or contract exemptions. The state cannot free any person or corporation from subjection to this power. All personal as well as property rights must be held subject to the police power of the state. *Boston, &c., R. Co.* v. *York County,* 79 *Me.* 386. As was said by Chief Justice Marshall, in *Dartmouth College* v. *Woodward,* 4 *Wheat.* 518, 629; 4 *L. Ed.* 629: "The framers of the constitution did not intend to restrain the states in the regulation of their civil institutions, adopted for internal government, and the instrument they have given us is not to be so construed." And in *McCulloch* v. *Maryland,* 4 *Wheat.* 316, 415; 4 *L. Ed.* 579, 603, this eminent expounder of the federal constitution observed that it was "intended to endure for ages to come, and, consequently, to be adapted to the various crises of human affairs."

It has been held without dissent that the clause of the federal constitution forbidding the states to pass any laws impairing the obligation of contracts, does not so far remove from state control the rights and properties which depend for their existence or enforcement upon contracts, as to relieve them from the operation of such general regulations for the good government of the state, and the protection of the rights of individuals as may be deemed important. All contracts and all rights are subject to this power; and not only may regulations which affect them be established by the state, but all such regulations must be subject to change from time to time, as the general well-being of the community may require, or as the circumstances may change, or as experience may demonstrate the necessity. 2 *Cooley Const. Lim.* (*8th ed.*) 1237." Powers, the exercise of which can only be justified on this specific ground (that they are police regulations), and which would otherwise be clearly prohibited by the constitution, can be such only as are so clearly necessary to the safety, comfort or well-being of society, *or so imperatively required by the public necessity,* as to lead to the rational and satisfactory conclusion, that the framers of the constitution

could not, as men of ordinary prudence and foresight, have intended to prohibit their exercise in the particular case, notwithstanding the language of the prohibition would otherwise include it." *People* v. *Jackson and Michigan Plank Road Co.,* 9 *Mich.* 285, 307; 2 *Cooley Const. Lim. (8th ed.)* 1241.

Chief Justice Hughes, in the recent case in the Supreme Court dealing with the subject, held that emergency does not create power, but merely furnishes the occasion for its exercise. In applying the apposite rule, he said: "Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order. The policy of protecting contracts against impairment presupposes the maintenance of a government by virtue of which contractual relations are worthwhile—a government which retains adequate authority to secure the peace and good order of society. This principle of harmonizing the constitutional prohibition with the necessary *residuum* of state power has had progressive recognition in the decisions of this court. * * * The economic interests of the state may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts." *Home Building and Loan Association* v. *Blaisdell,* 290 *U. S.* 398; 54 *Sup. Ct.* 231; 78 *L. Ed.* 255.

True, the statute presented for consideration in that case provided that its efficacy should cease on May 1st, 1935, and the act in question here has no such limitation. But it is not requisite that the operation of the law be limited to a definite term. It is the actual existence of the emergency solely, and not the limitation of the law's operation to a prescribed period, that gives validity to this exercise of the reserve element of sovereignty called the police power. When the emergency ceases to exist, the operation of the statute will be arrested, even though the prescribed term of its operation may not then have expired. A law depending upon the existence of an emergency, or other certain state of facts, to uphold it, may cease to operate if the emergency ceases, or the facts change, even though valid when passed. It is

always open to judicial inquiry whether the exigency still exists upon which the continued operation of the law depends. The operation of the statute itself could not validly outlast the emergency. *Home Building and Loan Association* v. *Blaisdell, supra; Chastlelon Corporation* v. *Sinclair,* 264 *U. S.* 543, 547; 44 *Sup. Ct.* 405; 68 *L. Ed.* 841.

Tested by these considerations, the statute is a valid exercise of the police power. It violates none of the constitutional provisions cited by appellants. The finding of the legislature that an emergency exists has a factual basis of which we take judicial notice. The legislation is addressed to a legitimate end, and the measures taken are reasonable and appropriate to that end. *Home Building and Loan Association* v. *Blaisdell, supra.*

We are of opinion, therefore, that the judgments should be affirmed, but without prejudice to relators' right to invoke the remedy for the collection of their judgments prescribed by the statute. In such a proceeding the finance commission will, for obvious reasons, be a necessary party. And that is now an express requirement of statute. *Pamph. L.* 1933, *pp.* 859, 866.

Justices Trenchard, Bodine and Perskie, and Judges Dear and Wells concur in the views herein stated.

DONGES, J. (Concurring.) My vote is to affirm the judgment of the Supreme Court.

My conclusion is that chapter 340 of the laws of 1931 (*Pamph. L.* 1931, *p.* 830), as amended by chapter 236 of the laws of 1932 (*Pamph. L.* 1932, *p.* 519), does not violate article 4, section 7, placitum 3, of the constitution of this state, forbidding the passing of any law impairing the obligation of contracts, or depriving a party of any remedy for enforcing a contract which existed when the contract was made, or article 1, section 10 of the federal constitution, prohibiting the several states from passing any laws impairing the obligation of contracts. Nor is it in violation of the fourteenth amendment of the federal constitution as depriv-

ing the appellants of property without due process of law, or denying them the equal protection of the law.

It is urged that the act may be sustained under the reserved police power of the state, and that it was enacted as an emergency act in the existing general financial emergency. The act declares that it is designed to meet "the public emergency arising from a default in the payment of existing municipal obligations, and the resulting impairment of public credit," but I find nothing that declares it to be by reason of the general financial situation or limits its operation to the duration thereof. It may as well apply when the national emergency ceases to exist, if any municipality is confronted by an emergency resulting from default in the payment of its obligations.

It has been repeatedly held that a change of remedy is not an impairment of the contract or the deprivation of a remedy for enforcing such contract.

"The authority of the legislature over municipal corporations is supreme. The only limitation upon its power to alter, modify or repeal the charter is, that the repeal shall not operate to impair the obligation of existing contracts, or deprive creditors of a remedy for enforcing such contracts which existed when they were made." *Rader* v. *Road District*, 36 *N. J. L.* 273, 276; *Bartlett* v. *Trenton*, 38 *Id.* 64. In the latter case it was held that the legislature had power to substitute for the action of debt another form of remedy, which did not admit of jury trials.

In *Bronson* v. *Kinzie*, 1 *How.* 311, Mr. Chief Justice Taney said:

"Although a new remedy may be deemed less convenient than the old one, and may in some degree render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional. Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract."

In *Penniman's Case*, 103 *U. S.* 714, 720, Mr. Justice Woods said:

"The general doctrine of this court on the subject may be thus stated: In modes of proceeding and forms to enforce the contract the legislature has control and may enlarge, limit, or alter them, provided it does not deny a remedy or so embarrass it with conditions or restrictions as seriously to impair the value of the right." Citing *Bronson* v. *Kinzie, supra; Von Hoffman* v. *City of Quincy,* 4 *Wall.* 535; *Tennessee* v. *Snead,* 96 *U. S.* 69.

In *Sturges* v. *Crowninshield,* 4 *Wheat.* 122, 200, Mr. Chief Justice Marshall distinguished between obligation and remedy in the following language:

"The distinction between the obligation of a contract and the remedy given by the legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct."

Again, in *Von Hoffman* v. *City of Quincy, supra* (at *pp.* 553, 554), it was said:

"It is competent for the states to change the form of the remedy, or to modify it otherwise, as they may see fit, provided no substantial right secured by the contract is thereby impaired. No attempt has been made to fix definitely the line between alterations of the remedy, which are deemed legitimate, and those which, under the form of modifying the remedy, impair substantial rights. Every case must be determined upon its own circumstances."

The statute under consideration does not take away the remedy, but affords the creditor an ample remedy, namely, recourse to the Supreme Court to compel payment.

It is not necessary to determine whether or not the legislature may deprive the Supreme Court of its power to issue a *mandamus.* The Supreme Court, in the instant case, refused its writ of *mandamus,* and we are dealing with a situation where appellant asserts a right to have such writ upon the existence of a clear legal right thereto.

I conclude that the refusal of the Supreme Court to award *mandamus,* in the situation presented, was justified.

*For affirmance*—TRENCHARD, BODINE, DONGES, HEHER, PERSKIE, DEAR, WELLS, JJ. 7.

*For reversal*—THE CHANCELLOR, CASE, VAN BUSKIRK, KAYS, HETFIELD, DILL, JJ. 6.