CLARENCE E. F. HETRICK ET AL (CITY OFFICIALS OF ASBURY PARK), PROSECUTORS, v. CARLTON ROBERTS ET AL (MEMBERS OF ASBURY PARK BEACH COMMISSION), DEFENDANTS.

Submitted October 6, 1936—Decided March 13, 1937.

Before Justices PARKER and LLOYD.

For the prosecutors, *Ward Kremer* and *Harry Cassman.*

For the defendants, *Lester C. Leonard,* special assistant attorney-general.

The opinion of the court was delivered by

PARKER, J. The writ in this cause is addressed to "Carlton Roberts, George Smock, Samuel H. Calvert and James Forsyth, the Beach Commission of Asbury Park," and calls for "a certain action or proceeding appointing" them by name

as members of the Asbury Park Beach Commission, and any and all proceedings done and taken by them as such beach commission. Fundamentally the writ is aimed at chapter 160 of the laws of 1936 (*Pamph. L., p.* 372) entitled "An act concerning municipalities." This act applies to "every municipality in this State under control of the Municipal Finance Commission." That language in turn harks back to chapter 340 of the laws of 1931 (*Pamph. L., p.* 830) entitled "An act concerning municipal finances" since amended many times. The act of 1931, one of our financial emergency statutes, provided that in case of default on municipal bonds and on summary investigation by a justice of this court, such justice may make an order declaring such default, and on filing the same, the statute itself designates the attorney-general, the state tax commissioner, and the commissioner of municipal accounts as the "Municipal Finance Commission." The result seems to be a *quasi*-receivership of the municipality in default, the original governing body continuing to function in a limited way, controlled both as to action and non-action by the municipal finance commission, in respect to matters of a financial character. See *Hourigan* v. *North Bergen,* 113 *N. J. L.* 143, 149. A number of municipalities, of various grades, are subject to this act. The city of Asbury Park is one of them, and the act of 1936, first cited above is applicable to it. The meat of the present controversy is in the very first clause of the act of 1936, which reads: "In every municipality of this State under control of the Municipal Finance Commission, and which shall own the beach and upland contiguous thereto, a beach commission shall be appointed." The act goes on to provide for method of appointment, powers, &c., which are in general to control the beach, make concessions for bathing, amusement, and other purposes, collect revenue, and deposit it in a special fund. Police powers are also conferred. It may be said, in a broad and general way, that the necessary effect of the act is to remove the owned beach front from the control both of the original governing body and the municipal finance commission.

Pursuant to this act, the governor appointed four citizens of Asbury Park as members of the beach commission; they qualified, after a rule to show cause was made herein, but had not functioned when the present writ issued, on July 17th, 1936. Consequently they have not taken any action beyond qualifying; and hence, the legal attack is on the statute itself and the appointments made thereunder by the governor, which necessarily stand or fall with the statute.

The rule to show cause why *certiorari* should not be allowed is dated June 23d, 1936, and contains a stay of any exercise of functions as commissioners. However, they qualified on July 1st. The writ issued July 17th and they were then in office. There may be some question as to whether *certiorari* rather than *quo warranto,* is the proper remedy; but as this case is of importance as involving the constitutionality of a statute, it seems better not to deal with a point not stated by either side, particularly as the brunt of the attack is not on the right of the defendants to be members of the municipal finance commission, but on the existence of such commission as a legal and constitutional entity. *Lewis* v. *Newark,* 74 *N. J. L.* 308, 313; *Loughran* v. *Jersey City,* 86 *Id.* 442. Not only this, but the prosecutors constitute the *ci-devant* governing body of Asbury Park, whose performance of official duty is interfered with.

The claim of the present prosecutors is that the act of 1936 is unconstitutional, and therefore there is legally no such body as the beach commission of Asbury Park. We proceed therefore to examine that claim. A number of reasons are assigned, but there are only two basic points in the case, the determination of which will dispose of all matters at issue. The first is that the object of the act is not expressed in the title. The second is that the act violated that part of paragraph 11, section VII, article IV of the state constitution which reads: "The Legislature shall not pass private, local or special laws in any of the following enumerated cases, that is to say: * * * regulating the internal affairs of towns and counties; appointing local officers or commissions to regulate municipal affairs."

As to expression of object in the title: the title reads: "An act concerning municipalities." The objection of course is, not that it is too narrow, but too broad, and gives no real indication of an intent to legislate for seaside cities owning their beach front. On this point *Beverly* v. *Waln*, 57 *N. J. L.* 143, and *Johnson* v. *Asbury Park*, 60 *Id.* 428, with other cases, are cited. But later decisions are more liberal. In *Kennedy* v. *Belmar*, 61 *Id.* 20, 24, 25, a title similar to that before us was sustained; and Beverly *v.* Waln was carefully distinguished by the Court of Errors and Appeals in *Allison* v. *Corker*, 67 *Id.* 596 (at *p.* 599). Acts entitled "An act concerning cities" are almost multitudinous in our statute books. We think that such cases as *Quigley* v. *Lehigh Valley Railroad Co.*, 80 *Id.* 486; *Sawter* v. *Shoenthal*, 83 *Id.* 499, and *Ringer* v. *Paterson*, 98 *Id.* 455, sufficiently answer this point.

As to the second point, which relates not to the title, but to the body of the act: the claim is that an act limited in its operation to municipalities (a) which are under control of a municipal finance commission, and (b) own the beach and upland contiguous thereto ("shall own" be it observed, is the statutory language) shall have a beach commission, which, as we have seen, when appointed, in practice ousts the original body of jurisdiction over the beach for the time being.

The question always is, under our decisions, whether an illusive class has been created.

If the act were restricted to municipalities now under a finance commission, it would probably be unsound. Or if, again, it were restricted to those now owning a beach front, it would likewise be faulty. But this act is not restricted in either particular. It is settled law, we think, that seacoast municipalities form a proper class for legislation. As to cities only, it was so held in *Bowker* v. *Wright*, 54 *N. J. L.* 130, and *Johnson* v. *Ocean City*, 74 *Id.* 187; and *a fortiori*, we think, in the case of municipalities generally. In fact, the word "cities" in *Pamph. L.* 1889, *p.* 206, was enlarged in 1890 to include other municipalities. *Pamph. L., p.* 160: *Comp. Stat., p.* 1069, *pl.* 1723. Such "cities" are designated in a class by themselves. *Comp. Stat., p.* 956, *pl.* 1338.

Power to purchase shore front for park or recreation purposes was conferred by *Pamph. L.* 1894, *p.* 146. The constitutionality of that act was adjudged in *Seaside, &c., Co.* v. *Atlantic City,* 74 *Id.* 178; *affirmed,* 76 *Id.* 819; and in *Fishblatt* v. *Same,* 78 *Id.* 134; *affirmed,* 80 *Id.* 269.

Proceeding a step farther, we have the inquiry whether out of this class of coast municipalities may be formed a subclass of those that are under control of the municipal finance commission, and own beach and contiguous upland. It is plain, from a reading of the act of 1936, that the legislature deemed it wise that the municipal finance commission, and the governing body working in harness together, should not control the owned beach front, and that it should be separately administered. We see nothing illusive about this classification, if it can properly be so called. It relates to beach front as an asset to be administered by a different receiver, so to speak, and is naturally confined to insolvent cities having such an asset now or in the future, and includes all such. As was remarked in *Bowker* v. *Wright, supra* (at *p.* 133), "if this law were general, so as to include all the cities of the state, only those situated on or near the ocean, having a beach or ocean front, could use it, showing that they are a class distinct from other cities, and thus free from constitutional prohibition. There is, therefore, no defect in this legislation."

It is said that there is no other seaboard municipality owning a beach front and administered by the municipal finance commission. But there may well be others in the future, and to that the act by its very language is applicable.

We conclude that the second point also is not well taken. The writ of *certiorari* will therefore be dismissed, with costs.