CITY OF ASBURY PARK, A MUNICIPAL CORPORATION OF
THE COUNTY OF MONMOUTH, CLARENCE E. F. HET-
RICK, MAYOR OF THE CITY OF ASBURY PARK.
THOMAS H. PRATT, HENRY F. MILLER, HARRY B.
WHITE, HARRY R. INGALLS, COUNCILMEN OF THE
CITY OF ASBURY PARK, MILFORD G. FARLEY, CITY
MANAGER OF THE CITY OF ASBURY PARK, J. LINWOOD
SHEPHERD, CITY TREASURER OF THE CITY OF AS-
BURY PARK, AND MARY E. VACCARO, ACTING CITY
CLERK OF THE CITY OF ASBURY PARK, RELATORS, v.
GEORGE A. SMOCK, 2D, CARLTON M. ROBERTS, DORIS
I. WEEDEN AND HARRISON G. HURLEY, CONSTITUT-
ING THE BEACH COMMISSION OF THE CITY OF AS-
BURY PARK, AND WILLIAM P. STRICKLAND, SUPER-
INTENDENT OF THE BEACH COMMISSION OF THE
CITY OF ASBURY PARK, RESPONDENTS.

Argued January 7, 1939—Decided January 13, 1939.

Before Justice PERSKIE, in chambers, pursuant to statute.

For the relators, *Ward Kremer, Harry Cassman* and *Emerson Richards.*

For the respondents, *Durand, Ivins & Carton* (*James D. Carton, Jr.*, of counsel), and *Bilder, Bilder & Kaufman* (*Samuel M. Kaufman*, of counsel).

PERSKIE, J. Many are the steps leading to the instant application in this cause. It will serve no special purpose to trace them. Suffice it to observe, in most general terms (in the interest of greater clarity), that on March 7th, 1935, the city of Asbury Park, because of its financial difficulties, was placed under the control of the Municipal Finance Commission of the State of New Jersey. *R. S.* 52:27-1, *et seq.*

Thereafter, on January 4th, 1936, in pursuance of a petition filed, by creditors for themselves and others similarly situated, for the approval of a plan of adjustment or composition of the obligations of the city, I assumed jurisdiction and ordered the filing of the petition in the office of the clerk of the Supreme Court. *R. S.* 52:27-34. Many hearings and conferences followed to the end of determining whether the proposed plan should be approved. As a result of these hearings and conferences a plan for the adjustment or composition of the city's debt was adopted. That plan received the approval of the necessary percentage (eighty-five per cent.) of the creditors, the Municipal Finance Commission, and the court.

Finally, the city refunded its indebtedness in accordance with the plan as approved. It then made application to be relieved from the supervision of the Municipal Finance Commission of the state. After publication of notice of that application and service thereof on all parties in interest, I did, on December 10th, 1938, sign an order in which it was ordered (1) that the Municipal Finance Commission of the State of New Jersey "cease to function in Asbury Park" (in other words, an end was put to its jurisdiction over that city) ; and (2) that the city appropriate in its budget for the year of 1939, as part of its debt service, the sum of $30,168.69 for the payment of the 1930-1932 state school bonds, dated March 8th, 1934, and held by the county of Monmouth.

Pursuant to directions contained in the order of December

10th, 1938, the Municipal Finance Commission ceased to function in Asbury Park and the city made a special appropriation and paid the moneys dues to the county for the bonds.

Following the order of December 10th, 1938, the duly elected governing officials of the city retook possession, control and operation of its beach and beach property which was then in possession, control and operation of a beach commission created in pursuance of *R. S.* 40:55A-1, *et seq*. The latter, however, refused the demand of the director of public works to surrender or deliver up to the city the moneys and other property, records, leases, &c., pertaining to its control and management of the beach and beach property. Hence this application to compel them to do so.

The refusal on the part of the beach commissioners to comply with the city's demand is, in effect, rested upon the grounds that their existence is the creature of a statute in which there is no provision for a situation such as is here presented, and that, at all events, they are answerable only to the legislature for their conduct. The grounds for the refusal are without merit.

The statute creating the beach commission sets up an autonomous government within the applicable municipality. It vests in the commission, among other things, all the powers theretofore vested and exercised by the governing officials of that municipality in matters relating to management and control of the beach and beach property. By virtue of these powers, I heretofore compelled the governing officials to surrender and deliver up to the beach commissioners the very property and type of chattels which the governing officials now claim. The issue before me is not one relating to disciplinary conduct of the beach commissioners for which they are, of course, answerable to, among others, the legislature. The sole issue before me is whether, as prosecutors claim, the statute creating the beach commission (*R. S.* 40:55A-5) is no longer "operative" in Asbury Park. Is that claim sound? I think so.

It is settled that the only municipalities which, under the statute, *"shall have"* a beach commission are those (a) "which

are under the control of the Municipal Finance Commission," and (b) which "own the beach and upland contiguous thereto * * *." In other words, the factual existence of both provisions are necessary; both provisions are tantamount to conditions precedent; and both provisions must be made to appear in order to make this statute creating the beach commission "operative" in a municipality. *Hetrick* v. *Roberts,* 117 *N. J. L.* 584, 587; 190 *Atl. Rep.* 504; *affirmed,* 118 *N. J. L.* 586; 194 *Atl. Rep.* 557. And it is equally well settled that the "language" of the statute creating the beach commission "harks back" to an "Act concerning municipal finance." Chapter 340, *Pamph. L.* 1931, *p.* 830, as amended, now *R. S.* 52:27-1, *et seq. Hetrick* v. *Roberts, supra* (at *p.* 585). The result sought to be accomplished seems to be a "*quasi*-receivership" for the municipality. *Cf. Hourigan* v. *North Bergen Township,* 113 *N. J. L.* 143, 149; 172 *Atl. Rep.* 193; *Hetrick* v. *Roberts, supra* (at *p.* 584).

It would indeed create great chaos in the management and control of the beach and beach property and in the general internal affairs of the city if further uncertainty were permitted to exist when, as now, there is no longer an uncertainty as to whether the statute creating the beach commission is or is not "operative" in Asbury Park.

Since Asbury Park is no longer under control of the Municipal Finance Commission, since it is no longer in default on its obligations, and since there is no further need for the receivership, I am firmly of the opinion that the statute (*R. S.* 40:55A-1, *et seq.*) is no longer "operative" in Asbury Park. Thus further exercise of power by the beach commissioners will be arrested even though their respective terms have not expired. *Cf. Hourigan* v. *North Bergen Township, supra* (at *pp.* 151, 152).

Just as the governing officials were in the first instance compelled to turn over to the beach commissioners possession and control of the beach and beach property together with all chattels relating thereto when the statute was "operative," by the same token, in all logical reason and justice, the beach commissioners should return to the governing officials like

possession and control of the beach and beach property together with all chattels relating thereto, when the statute is no longer "operative" in Asbury Park.

The parties have been fully heard, there is no dispute as to the facts, there is no constitutional question involved, and in my opinion the law applicable is clearly with the application. Accordingly, a peremptory writ of *mandamus* will, in the first instance, be allowed. *State, ex rel. Kelly* v. *Mayor, &c., Paterson,* 35 *N. J. L.* 196; *American LaFrance Fire Engine Co.* v. *Seymour,* 79 *Id.* 92, 96; 74 *Atl. Rep.* 439; *Hudson County National Bank* v. *Bayonne,* 113 *N. J. L.* 258, 264; 174 *Atl. Rep.* 241.