STATE, EX REL. EMIL GABLER, v. TREASURER, &c., OF THE CITY OF ELIZABETH.

1. The ninth section of the act concerning executions, providing for the payment of executions against municipal corporations, was repealed by the supplement of March 27th, 1878, the latter being in substitution of the former enactment.
2. Such repeal is ineffectual against prior creditors when it, in any substantial degree, impairs their remedy under the repealed statute.
3. Under the circumstances of this case—*held*, that the relator's remedy under the former act was so qualified by local legislation, that the substituted act in no essential degree affected it.

On rule to show cause for *mandamus*.

Argued at June Term, 1879, before Justices VAN SYCKEL, KNAPP and DIXON.

For the relator, *W. J. Magie.*

For the respondents, *R. E. Chetwood.*

The opinion of the court was delivered by

KNAPP, J. The plaintiff had a rule to show cause against the mayor, comptroller and treasurer of the city of Elizabeth, why an attachment should not issue against them for their neglect or refusal to pay the amount of the above judgment, or, failing that, a *mandamus* to compel such payment.

An execution was issued on the judgment and placed in the hands of the sheriff of Union county, and returned with his certificate that no property of the city subject to execution was found out of which to make the money due thereon. The sheriff then served a copy of the execution upon the mayor, comptroller and treasurer of the city, to obtain payment by force of the provisions of the ninth section of the act concerning executions. *Rev., p.* 391.

The section provides that, "whenever a writ of execution

shall issue against the inhabitants of any township, city or borough of this state, * * * in case there should be no property belonging to said township, city or borough sufficient to satisfy the same whereon to levy, then the officer authorized to execute said process shall serve a copy of the same on the collector of said township, city or borough, who is hereby required to pay and satisfy the same out of the first moneys belonging to said township, city or borough, which shall come into his hands."

It is conceded that the term "collector" used in this act means the officer in either of the municipalities named having the legal custody of and power to disburse the funds of such corporation, and that, in the city of Elizabeth, those officers upon whom process was served unitedly perform those functions.

The writ was served on the 12th of March, 1879. No money has since been paid by the city officers upon the execution.

Upon the allegation that moneys had been received by the city treasurer, belonging to the city, sufficient to pay said execution and payment withheld, this rule was granted.

Several grounds are taken by respondents against granting to plaintiff the relief prayed for. The first is that the section of the act under which the service of the execution upon the respondents was made, was repealed at the time of the service. By an act approved March 14th, 1879, (*Pamph. L., p.* 392,) that section was repealed in express terms. This was two days after service of the execution. On the 27th of March, 1878, (*Pamph. L., p.* 182,) a supplement to the act respecting executions was passed, which provided that "when any execution shall be issued against any town, township, borough, or other municipal corporation of this state, * * * upon any judgment against such town, &c., whether upon a judgment recovered before the passage of this act or subsequent thereto, and there shall be no property belonging to such town, &c., sufficient to satisfy the same whereon to levy, then the officer authorized to execute such

process shall serve a copy of the same not only on the collector of such town, &c., as is now required by law, but also upon the assessor thereof, who is by law required to assess the taxes in and for such town, &c.; and upon receipt of such copy of execution, it shall be the duty of such assessor to assess and levy, in addition to the regular taxes, the amount due upon the said execution, with interest to the time when the same shall be paid, to the officer serving such process, upon all the property within such town, &c.; and this tax shall be assessed and collected at the same time and in the same manner, and under the same conditions, restrictions and regulations as taxes for other purposes are required to be assessed and collected in such town, &c., and when collected, shall be paid over to the officer serving the said process."

It seems to me that the plaintiff's view of this act, that it merely gives an additional or cumulative remedy to an execution creditor, without affecting the former section of the act respecting executions, is not the correct one. Although it is true that repeals by implication are not favored, (*State* v. *Chambersburg*, 8 *Vroom* 260,) yet, in this case, it seems to me impossible to escape the conclusion that the legislature intended to do away with the ninth section of the old act, by the substitution of the other in its stead, unless we deny to words used in the later act their plain, obvious meaning. The act of 1878 embraces the entire subject of the old enactment. It provides for all cases of execution against municipal corporations, whether upon judgments recovered before or after its passage; and embraces a full and complete procedure for service of such executions, for raising the money with which to pay them, and directs the manner of payment. After its passage, it embodied the statutory remedy to be pursued by all judgment creditors of municipal corporations. *Roche* v. *Jersey City*, 11 *Vroom* 257. The existence of the old law was absorbed in the new enactment, and the latter regulates the remedy to be pursued by the plaintiff in this case, unless, as he contends, its force as against him cannot be asserted, because of that provision found in Paragraph 3,

Section 7, Article IV., of the state constitution, prohibiting the passage of any law "depriving a party of any remedy for enforcing a contract which existed when the contract was made."

I have no doubt that the claim upon which the plaintiff's judgment was founded rested on *contract*, within the meaning of that clause in the constitution; and it appears in the case that when the plaintiff's right accrued against the city, the ninth section of the act concerning executions, under which these proceedings are taken, was in force. The plaintiff is pursuing his remedy in the appropriate manner, without having served the executions upon the assessors, unless the act of 1878 is binding upon him and controls his proceedings. If such be the effect of the last-mentioned statute, he has no standing in court, as his proceedings do not follow that act.

His remedy should have been pursued as directed by the act of 1878, unless that act deprives him of, or substantially impairs, an existing remedy. Whether such is its effect is one of the questions in this case.

It is not every act of legislation affecting existing remedies which is prohibited; such as affect mere forms and methods of procedure, leaving unimpaired the substance, are still rightful subjects of legislation. In the case of *Rader* v. *Road District of Union,* 7 *Vroom* 273, in which the constitutional clause in question was considered, this language is used: "It is clear that any legislation the effect of which is to deprive the party of the power to resort to the person or any property which, as the law stood when the contract was made, might have been taken or applied in satisfaction of his demand, is within the constitutional prohibition. It is equally clear that the legislature may make laws which incidentally affect the pursuit of remedies for the enforcement of existing contracts, such as regulate the course of practice in the courts, altering the forms of action, and acts altering or modifying, in mere matters of form, the means of realizing the benefits of a contract, leaving the substance of the remedy unaffected."

The plaintiff insists that the change wrought by the new act impairs the remedy, as it existed prior to its passage, in material and substantial respects, by taking away his assumed right, to be immediately paid by the city treasurer out of any money belonging to the city, which he may have on hand at the time of service of the execution, or out of the first moneys that may come to his hands thereafter, and postpones payment until the specific money is assessed and collected into the treasury for the discharge of his debt. That it not only delays him in the receipt of his debt, but refers him to another and different fund from that provided in the former law for his payment. The respondent claims that, in the respects named, the remedy remains substantially the same as before, while the new act, in its additional provisions, adds value and efficiency to it as a measure for his payment. To a proper estimate of the extent and character of the change effected by this legislation, it is necessary to understand what really were the plaintiff's rights preceding it.

If unrestricted force be given to the ninth section of the execution act, payment of an execution properly served, is unconditionally and imperatively enjoined upon the disbursing officer from the first moneys coming into his hands thereafter, from whatever sources, to the city's use, regardless of all other claims or other legal duties and obligations imposed on the city, and of the rights of other claimants. To accord this paramount force to the law, would be beyond legislative intent.

But this law stands as part of our legal system, and is subject, in its construction, to such modification as other legislation imposes.

The general tax law passed in 1866, (*Rev.*, *p.* 1159, § 83,) requires payment by townships, cities, and wards of county and state taxes, out of the first moneys that shall be collected by them. This provision, it was said in *State, ex rel. Douglas,* v. *Pierson,* 4 *Vroom* 363, subjects the moneys coming to the collector's hands to the payment of county and state quotas, to the exclusion of all other claims, until those taxes are fully paid.

When the state claim is asserted, the execution creditor's right to be paid is subordinated to the public right. Respondents show, in this case, that, in fact, large sums of state and county tax were due from the city and in arrears, when the execution was served, and, further, that a writ of *mandamus* issued out of this court early in May following, requiring payment of such arrears, a compliance with which had absorbed all the receipts of the treasurer from that time, leaving the amount so due still partly unpaid. Until this money be paid to the county collector, for the county and state tax due from the city, the treasurer could not properly pay this execution; nor would the plaintiff be entitled to a mandatory order for its payment.

There is other legislation which, I think, qualifies the operation of the section in question. The city treasurer, each year, has in hand considerable sums of money from the state school fund. This fund, by the ninety-first section of the school law, cannot be used for any other than school purposes, by the city.

By the charter of the city of Elizabeth, money collected for damage to school buildings or property, comes to the treasurer's hands, but is, by the law, devoted exclusively to the support of public schools. *Supp't March 4th*, 1863, § 61.

All assessments upon lands for public improvements are paid to the city treasurer. These moneys are set apart by the city charter as part of a sinking fund for the indemnity of the creditors of the city holding bonds issued to pay for those improvements. *Supp't April 4th*, 1872, § 12.

As against moneys coming into the treasurer's hands from any of these sources, would a general judgment creditor be entitled to make claim to preference in payment? I think not.

The city charter provides, also, for distribution and appropriation of the whole tax levy, for specific objects; and when the taxes are received into the treasury, all payments out of any appropriation must be for claims within it.

It is enacted in Section 4 of the supplement to the charter,

passed April 4th, 1872, that all warrants drawn upon the treasurer " shall contain a distinct reference to the appropriation or fund under or upon which, and the purposes for which, it is drawn," and, further, that " no warrant shall be drawn unless the sum specified therein is in the city treasury, and has been collected or paid into the treasury specially for that purpose."

Again, in Section 26 of the supplement of April 2d, 1869, is the following provision : "The moneys raised by tax shall be credited by the treasurer to the several appropriations contained in the ordinance authorizing said tax, and shall be paid out for the specified purpose to which the same are appropriated, and for no other."

These several acts were passed after the ninth section of the execution act, and were in force when the plaintiff's claim against the city had its inception. They embody a financial plan, emanating from the controlling power of the legislature, for the protection of taxpayers, and binding upon the city and its officers. All persons dealing with the city have full notice of these restrictions. I am unable to see any good reason why they have not force to impose restraints upon the disbursing officer of the city, essentially qualifying his duty, as broadly declared in the section in question, as well as to limit the right of the execution creditor to payment of his execution only out of moneys in hand when the writ is served, or coming in thereafter, belonging to a fund previously appropriated to the payment of the specific claim, or to a class of claims which properly includes it.

If there be no appropriation for paying judgments against the city, or if the treasurer, on looking into the claim on which the judgment is founded, finds no money to the credit of any fund out of which such claim is, under the charter, properly payable, one of these statutes must be disregarded by him. He cannot comply with the requirements of both. If the local statutes qualify the operation of the general law in respect to the judgment creditor's remedy against the city, they must be regarded in ascertaining the extent and character

of that remedy. It is legislation subsequent to the general law, and so far as it is inconsistent with the provisions of the general law, the latter must give way. The later expressions of the legislative will must prevail over the earlier, if they are in conflict. *State, Taintor, pros.,* v. *Morristown,* 4 *Vroom* 57.

I do not yield assent to the suggestion that charter provisions like those mentioned, are mere regulations for city officers in the administration of their ordinary local affairs, and not designed to affect in any way the general statutes for the collection of debts with which they may conflict. They are laws for the protection of the property and rights of large communities, and within the districts over which they have force, are, like all other legislative acts, competent to modify or repeal all prior inconsistent legislation.

I have referred to these provisions of general law and of the city charter to show that the plaintiff was not invested with a remedy as broad and sweeping as he lays claim to ; that he not only is not entitled to be paid out of the first moneys of the city that may come to the treasurer's hands from whatever source, but is entitled to demand payment of the treasurer only from some fund previously appropriated to pay his claim, or devoted to the payment of a class of claims to which his properly belongs, or from moneys unappropriated. The only fund of this kind which can be claimed as applicable to the payment of his execution is the contingent fund ; but the evidence fails to show that the treasurer has in hand or is likely to receive any money belonging to this appropriation.

If my conclusions be correct, and this is the extent of his right against the respondent, it will be readily conceded, in view of the legislation referred to, that the act of 1878 took nothing of substantial value from him in impairment of his remedy, but, by its additional provisions, imparted substance and life to what was before, without judicial aid first had to provide a fund with which to pay, little better than the mere shadow of a remedy. It leaves him without ground to complain of the repeal of the earlier law.

I presume the power of the legislature will not be questioned

to amplify and improve an existing remedy by changes which make it more easy, certain or efficacious in accomplishing the purpose designed. This I think is what, in the relator's case, the legislature has done through the present law.

The application, as it stands, must be denied. But I see no reason why a *mandamus* should not issue to the assessors of the city to assess the amount of the execution at the time of the assessment of other city taxes. To this course no objection was made by the city, and such writ may issue if the relator desires it.