STATE, EX REL. THE BOARD OF WATER COMMISSIONERS OF THE CITY OF RAHWAY, v. ROBERT C. BREWSTER, TREASURER OF THE CITY OF RAHWAY.

1. When a statute is drafted in clear and unambiguous language, and the literal meaning of the language leads to no absurd result, and is not repugnant to other parts of the statute or to other acts *in pari materia*, such literal meaning should be accorded to the act in its exposition.
2. Money collected by the receiver of taxes of the city of Rahway, from taxes levied upon the real estate in a certain district known as the fire and water district, for the support of the water-works of such city, is, by force of Section 83 of the general tax act, liable, in the first instance, to the payment of the state and county quota of taxes.

On motion for a peremptory *mandamus.*

The following state of the case was agreed upon as the evidence to be used at the hearing on the return to the rule granted in the cause:

The attorneys of the above parties hereby stipulate that the following facts are agreed upon as the testimony to be used in the argument of the rule granted in the above cause:

1. The act entitled "An act to authorize the construction of works for supplying the city of Rahway and places adjacent with pure and wholesome water" was approved April 7th, 1868; that the act entitled "An act relating to municipal and other authorities owning or managing works for the supplying of water to the public" was approved March 14th, 1878; that a supplement to said last-mentioned act was approved March 14th, 1879; that up to this time, the city of Rahway has always, and still has, a population less than twenty thousand.

2. That said board, in December, A. D. 1878, did report to the mayor and common council of the city of Rahway the then deficiency in payment of water rents and penalties, and did then deliver to them a certified account thereof; and on or before the first Tuesday of May, A. D. 1879, did make the estimate required by said original act of 1868, and report the same, in writing, to said council, by which report the estimated deficiency was $5000; that said board, before said last-mentioned day, in pursuance of said laws of 1868 and 1879, in their discretion, and in lieu of fixing a sum to be assessed upon vacant lots, and lots having buildings thereon in which water was not taken, laid out a district as a fire and water district, and fixed such a sum as they deemed proper to be raised by taxation upon the real estate in said district, for the management of said works, being $6000, and before said date, reported the same to said common council; that said common council, in pursuance of said laws of 1868 and 1879, did thereupon cause said sums of $5000 deficiency and $6000 fire and water tax to be inserted in the tax levy of said year;

that the receiver of taxes of said city has been, and now is, from time to time, collecting the deficiencies, as required to be reported and raised under Section 18 of said act of 1868, and also the fire and water tax, as authorized by the said laws of 1879; that as fast as he collects the same, he turns the amounts over to the treasurer of the city of Rahway, Robert C. Brewster, esquire; that said treasurer has been asked by relators to turn such sums as aforesaid as may from time to time be paid him by said receiver, over to said board, to enable them to meet their financial needs in the management of their works, and that he has refused to do so, alleging that said city is largely in arrear to the county collector in the payment of the county and state tax, and that he is bound first to pay the whole amount due for said county and state tax out of the first money that comes to his hands for payment of taxes, before he can be required to pay said board anything due the board on account of payment of any water rents, penalties, deficiencies, or fire and water tax, collected by said receiver and paid over to him.

3. That it is true, as alleged by said treasurer, that there is a considerable sum due from the city of Rahway on account of its share of the state and county tax.

Argued at November Term, 1879, before Justices WOOD-HULL and REED.

For the relator, *J. Henry Stone.*

For the defendant, *Leslie Lupton.*

The opinion of the court was delivered by

REED, J. This is an application for a peremptory writ of *mandamus* to be directed to the treasurer of the city of Rahway, ordering that officer to pay over to the relators certain moneys in his hands derived from the collection of a fire and water tax levied in said city.

The application is opposed upon the ground that there is

still due from the city of Rahway, by force of Section 83 of the general tax law, a portion of the state and county tax required to be assessed in that city. That section is as follows: " That it shall be the duty of collectors of townships, wards or cities in this state, out of the first moneys which shall be collected by them, to pay to the county collector of the county in which they hold their offices, the state and county taxes required to be assessed in their several townships, cities and wards, at the time required by law to pay the same."

The moneys now in question are derived from what is called the district fire and water tax.

The laws of 1868, page 805, contain an act providing for the construction of works in Rahway, and for the creation of a board of commissioners to hold the property and manage the business connected with the said water-works. By that act the commissioners are directed to make each year an estimate of the interest on the water bonds, and the cost of running and keeping in repair the said works, and also the receipts from water rents, and report to common council the balance, as a deficiency, which deficiency was directed to be assessed as other city taxes were levied.

In 1879 the commissioners were empowered to lay out a district through which the water mains run, to be called the fire and water district. It was to include real estate along which the mains run, &c.

The commissioners were authorized to fix such gross sum as they shall deem necessary, to be raised by taxation upon the real estate in such district, for the management of such works, and shall report the same to the common council, and furnish a copy thereof to the assessors of taxes for the ensuing year, which sum shall be inserted in the tax levy of said ensuing year, to be levied and collected out of the real estate of said district, as other taxes are levied and collected ;  *  *  * and all proceedings now required or authorized to be taken for the assessment, collection and enforcement of the collection of taxes, shall be equally applicable to the assessment, collec-

tion and enforcement of the collection of the district fire and water tax.   *Pamph. L.* 1879, *p.* 314.

The character of this tax is thus fully displayed, because the relators rely upon the alleged peculiar character of this imposition, in their contention that the moneys received by means of its collection are unaffected by the eighty-third section of the tax act.

Upon a glance at that section, it is apparent that all moneys received by the city treasurer from taxes of whatever kind, are, to an amount equal to the state and county quota, required to be assessed in that city, within the descriptive words of the section.   If we accord to the words of the section their natural signification, the money in question goes to the county collector, as the first money collected by the receiver as tax collector of the city of Rahway.   The counsel for the relators contend that moneys derived from a tax of this kind were not within the view of the lawmakers at the time of the passage of the act.

It is obvious that this contention can be successful only upon the ground that a literal construction of this section leads to a result which is manifestly repugnant to the legislative design, as manifested by the entire act or of kindred acts.   Unless an intent differing from that which arises from the literal sense of the words used results from a resort to the context of this section, or from acts *in pari materia*, the only duty of the court is to construe the words of the section naturally and literally.   No principle is better settled, said Justice Elmer, or more important to be faithfully adhered to by the courts called upon to enforce written statutes, than that, in the absence of ambiguity in the language used, no exposition shall be made which is in opposition to the express words; or, as the maxim is sometimes expressed, it is not allowed to interpret what has no need of interpretation.   *State, West Jersey Ferry Co., pros.,* v. *Rudderow,* 2 *Vroom* 512.

A strong sense of the judicial duty of adhering to this rule of statutory construction is manifested by the Chief Justice

in his opinion in the case of *Douglass* v. *Chosen Freeholders of Essex Co.*, 9 *Vroom* 214.

This primary rule of construction is illustrated in the following cases: *Camden and Amboy R. R. Co.* v. *Commissioners*, 3 *Harr.* 71; *Townsend* v. *Brown*, 4 *Zab.* 80, 89; *Gay* v. *Harvey*, 12 *Vroom* 39; also the first maxim of Vattel, (*Dwar. on Stat.*, *p.* 126.)

In glancing at the general tax act, in connection with the act of 1879 relative to the collection of this fire and water tax, I am unable to see anything which exhibits an intention that Section 83 of the general act shall not apply to moneys derived from the latter tax. The money was collected from a tax imposed for the purposes of revenue. It was imposed for the support of a branch of the government of the city of Rahway. It was, by the terms of the act of 1879, assessed and collected by the same officers as other taxes are assessed and collected. The fact that the gross sum to be assessed was, by law, fixed by the commissioners who were to disburse the fund, has little significance. The board was organized to regulate a certain municipal interest, in the same manner that a school board or a board of fire commissioners regulates, or could be created to manage, the affairs of its respective department. The city could have, as a part of its municipal machinery, a variety of such departments. There may be, and in the larger cities are, separate boards for the management of the poor, fire, street, public building, &c., for the support of which, respectively, municipal taxes are imposed. The moneys for the support of all these departments are respectively assessed and collected by the same municipal officers.

Now the obvious design of Section 83 of the tax act is to place the burden of any neglect of these officers to properly assess or speedily collect, upon the municipality, and so prevent the loss or delay arising from the negligence of these officers from causing injury to the state or county. To accomplish this design, the section in question provides that whenever money from assessments for taxation of all kinds touches

the hands of the collector of taxes, it becomes subject to a diversion from the primary object of the levy to that of securing to the state and county their quota. When this quota is satisfied, then the future collections of all kinds of taxes—state, county or municipal—go to supply the deficiency caused by the diversion of the first moneys received.

If all the moneys assessed are collected, there may be some delay, but can be no loss resulting to the city or any of its departments. If a part of the amount assessed remains un-collected, then the question as to which department should bear the loss, or whether all should bear it in equal propor-tions, is between the city and its departments.

The treasurer of Rahway would probably be called upon to reimburse this board for any of this fire and water tax paid to the county collector, out of the first moneys collected after satisfying the state and county tax. Beyond this result, I do not perceive that the fact that this assessment is made distinctively upon a certain district has any force. The fact yet remains that the money from it passes through the hands of the tax collector of Rahway. It does so by express direc-tion of the act of 1879.

The legislature is presumed to act with a knowledge of the existing laws. *Sedg. on Stat. Cons.*, p. 106. They then knew that Section 83 of the general act subjected moneys received by that officer to this liability to be diverted to the payment of the state and county quota. Yet there is no provision ex-empting these moneys from the operation of that section. There is no direction that the receiver of taxes shall pay it directly to the board of commissioners. In the absence of anything which expressly, or by necessary implication, shows an intent differing from that which the section literally im-ports, I think it is impossible to engraft upon the act, by judicial construction, a provision which relieves the moneys in question from its operation.

The counsel for the relators cited the case of *State, ex rel. Pierson*, v. *Douglas*, 4 *Vroom* 363, as a case containing a ruling favorable to their view of the present question. But a glance

at the facts upon which the ruling in that case was made shows that there is no similitude between that and this case.

In that case the question was whether a personal tax belonging entirely to the county of Essex was a part of the county quota, within the meaning of the act, which was to be first paid out of the property tax of the city.

In that case there was no lien upon property provided by law, by means of which the collectors could insure the collection of the personal tax.

In that case there was no gross sum directed to be raised by the personal tax.

Upon these facts, the court held that there was not manifested an intent to insure to the county the amount of the poll tax which was assessed and not collected. Every feature. in that case which is relied upon in the opinion as leading tᴏ this conclusion is absent from the present case.

The application for the mandatory writ is refused, with costs.