HUDSON COUNTY NATIONAL BANK, AS ASSIGNEE OF EDWARD P. STOUT, RELATOR, v. CITY OF BAYONNE. LUCIUS F. DONOHUE, MAYOR, BERT DALY, DENNIS O'LEARY, JAMES J. DONOVAN AND JEROME J. BRADY, MEMBERS OF THE BOARD. OF COMMISSIONERS OF THE CITY OF BAYONNE, COUNTY OF HUDSON, RESPONDENTS.

Submitted May 11, 1934—Decided August 14, 1934.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the relator, *Benny & Cruden.*

For the respondents, *Alfred Brenner.*

The opinion of the court was delivered by

PERSKIE, J. Relator's statement of facts, conceded by respondents to be substantially correct, are as follows: On July 1st, 1930, Edward P. Stout, an attorney and counselor-at-law of the State of New Jersey, by reason of his experience in railroad tax litigation and his special knowledge of the law in respect to valuing and appraising railroad property was, by resolution, at the instance of the commissioner of revenue and finance of the city of Bayonne (with the consent of its solicitor) deputized, as special attorney-general, by the attorney-general of the State of New Jersey, to attend the meetings and represent the city's interest at the hearings before the state board of taxes and assessment on complaints of the attorney-general, that, for the year 1930, the properties of the Central Railroad Company of New Jersey, Lehigh Valley Railroad Company of New Jersey, East Jersey Railroad and Terminal Company and Pennsylvania Railroad Company, used for railroad purposes (including first and second class railroad properties) situate in the taxing district of the city of Bayonne, were assessed far below their true value and to have the state board of taxes and assessment review the assessments and correct them.

Respondents agreed to pay Stout a just compensation for his services. Stout performed the undertaking on his part.

Thereafter, he rendered itemized bills on March 18th, 1932, for the work done in each case. They totaled $24,000. No question is raised as to services rendered or the reasonableness of the charges made. His services were productive of substantial results for the city. On April 19th, 1932, Stout personally appeared before the commissioners and again demanded payment. The mayor, in answer to a question of Commissioner Daly, stated that the reason the bill was not paid was that the city did not have the funds with which to pay it. Whereupon, on April 19th, 1932, a resolution was adopted that the bill should be paid as soon as funds were available.

On January 11th, 1933, Stout assigned this claim to the Hudson County National Bank to further secure certain of his loans with that institution.

Annually, in 1932, 1933 and 1934, the city in its tax ordinances for said years provided for this item.

On February 10th, 1934, the commissioners of the city passed a resolution that a warrant be ordered drawn to the order of Stout and Hudson County National Bank in payment of the $24,000.

The procedure for the payment of an approved bill in the city of Bayonne appears to be as follows: A warrant for the bill is, in the first instance, drawn and signed by the city clerk; then it is signed by the city comptroller; then by the director of revenue and finance and lastly by the city treasurer.

On February 10th, 1934, the city clerk, William P. Lee, drew and signed a warrant, No. 40,206, as directed, and delivered it to Frederick Krum, city comptroller. It was drawn on the current account.

The city comptroller testified that when asked if he had received from the city clerk the said warrant for $24,000, that he "received all these warrants in bulk. I don't recall singly whether I received it or not. But in all probability he had. That he did not have the warrant; that when he signed the warrants he gave them to the commissioner of revenue and finance for his approval; that if he did not sign

the warrant he would in all probability have it; that he handed it to the commissioner of revenue and finance, together with all other checks in all probability; that he would not hand the warrant over to the commissioner of revenue and finance, or anyone else, without having attached his signature; that the fact that he has not the check in his possession would indicate that he signed it and handed it to some one; that he put it in the office of the commissioner of revenue and finance."

The city treasurer, John Ryan, testified that he never received the warrant for $24,000. He also testified as to the amount of the balances in the "current account," upon which the said warrant for $24,000 was drawn, as of the first day of each and every month from May 1st, 1932, to April, 1934, inclusive.

From the statement of the city treasurer it appeared that the monthly balances amounted to various sums ranging from $1,677,983.02 on June 1st, 1932, to $11,059.01 on February 1st, 1934; that all but four of said monthly balances were in excess of $100, and that on March 1st, 1934, the balance was $45,737.02, and on April 1st, 1934, it was $196,767.12.

The treasurer further testified that the city of Bayonne has a borrowing capacity for the year 1934 on $2,061,121.98 on tax revenue notes and a borrowing capacity of $4,032,228.56 on tax anticipation notes, or a total borrowing capacity in the neighborhood of $6,000,000. That the total amount borrowed on tax revenue notes is $500,000 and on tax anticipation notes, $250,000. It also appears that although the item of $24,000, as above indicated, was included in the appropriation of "tax litigation and special service taxation" in the tax ordinances of 1932 and 1933, and that it was intended to provide for the payment of this item, nevertheless, the appropriations of $77,075 for 1932 and the appropriation of $30,000 for 1933, were practically exhausted without the payment of this particular bill.

The respondents offered no direct testimony. Their cross-examination of the relator's witnesses, however, tended to indicate that this court had issued a writ of *mandamus* direct-

ing the city to pay the sum of $1,192,585.35 for taxes due to the state and county for the year 1933 and that there still remained an unpaid balance thereon of $1,100,000. That the city was without the necessary funds to meet this obligation; that notwithstanding its legal capacity to borrow or loan additional moneys, as testified by the treasurer, nevertheless, from a factual standpoint the banks would not make the city any further loans, and that the only way this bill could be paid would be if the city could borrow the money; that the loan of $735,000 during 1934 resulted in no practical advantage to the city, in dollars and cents; that it merely took care of past due obligations, in other words, it resulted in a mere change of bookkeeping entry.

Although the petition and rule to show cause, as indicated, appears to seek the enforcement of payment, the uncontraverted proofs clearly establish that on April 1st, 1932, and February 10th, 1934, the commissioners of the city had already ordered that the bill be paid. That was an accomplished fact. The last mentioned resolution ordered the drawing of the warrant for the payment thereof. The warrant, No. 40,206, was so drawn but apparently did not reach the last necessary city official, the treasurer. This, however, is not challenged.

Thus one of the questions that presents itself for discussion is whether the proofs in the instant case tend to indicate that the writ is sought to enforce merely the payment of moneys due from the city for professional services rendered for it and thus under the cases, for like relief for work and labor done, is improper. *Ahrens* v. *Fiedler,* 43 *N. J. L.* 400; *State* v. *Sofroney,* 9 *N. J. Mis. R.* 756, 758, and cases therein cited. Or, does it seek merely to enforce a ministerial act and therefore is it the proper remedy? *American LaFrance Engine Co.* v. *Seymour,* 79 *N. J. L.* 92, 96.

Be that as it may, no point is made on this score. The respondents resisted this application on two grounds only. First, shall a writ of *mandamus* issue against a municipality without sufficient funds available to make payments? Second, if the writ is issued—can a municipality be ordered to make payments of interest?

Under the first ground it is argued that although the proofs indicate that on or about the time of the issuance of the warrant the city had funds on hand, or funds aggregating, particularly on April 1st, 1934, of $196,000, nevertheless, this sum was in all "probability insufficient" to meet compulsory payments, &c. But this was a matter of proof. The respondents cannot supplant that requirement by mere argument.

And it is further argued that the difficulty, if not the impossibility, of being able to procure a loan from banks; its probable embarrassment of obeying a writ if granted, with one unsatisfied writ already outstanding against it, would work confusion in the financial affairs of the city. *McCormick* v. *New Brunswick,* 89 *N. J. L.* 117; *Hourigan* v. *Township of North Bergen,* 11 *N. J. Mis. R.* 194; *affirmed,* 113 *N. J. L.* 143; 172 *Atl. Rep.* 195.

The cross-examination of the vice-president of the Hudson County National Bank, of which bank the city appears to have borrowed moneys from time to time, rather contradicts the contention raised that the city is unable to procure further loans, despite its legal capacity to do so. This official testified that the city "got all they asked for" in 1933 and that "no request [for money in 1934] remains open at the present time." The date of the hearing being April 24th, 1934.

Nor do we think that there is any merit to the alleged apprehension by reason of the outstanding and unsatisfied writ of *mandamus* for the payment of taxes due the state and county for the year 1933. The rights and priorities of the respective parties, under their respective writs, may be determined when those questions arise and are properly presented. We fail to see how the granting of a writ, in the instant case, would work confusion in the financial affairs of the city.

A writ of *mandamus,* in such a case as this, is the only remedy of the creditor for the enforcement of his contract. *Lyon* v. *City of Elizabeth,* 43 *N. J. L.* 158; *Piscataway Township* v. *Bank of Dunellen,* 111 *Id.* 412; 168 *Atl. Rep.*

757; *Rahway* v. *Munday,* 44 *N. J. L.* 395. (See complete and interesting discussion of the subject by Mr. Justice Heher for the Court of Errors and Appeals in *Hourigan* v. *Township of North Bergen, supra.*)

It appears to us that both parties have submitted all the proofs that they desired to submit, these proofs are not controverted, and the law appears to be with the applicant. Therefore a peremptory writ of *mandamus* may be granted in the first instance. *State, ex rel. Kelly* v. *Mayor, &c., of Paterson,* 35 *N. J. L.* 196; *Byron* v. *Bayonne, supra* (at *p.* 96).

And now as to the second part, that of interest. Authorities are not in accord. In some jurisdiction interest is not recoverable, in the absence of an express agreement therefor, except in cases of money wrongfully obtained and illegally retained by it. See 44 *C. J.* 1451, § 4647 F, and general discussion of the subject-matter in 19 *R. C. L.* 1048, 1049, ¶ 337, wherein it is said among other things, that:

"It must be regarded as well settled that a claim against a municipality, although liquidated and due at a definite date, does not draw interest until demand has been made for its payment, unless it is otherwise agreed. This rule is independent of any statutory requirement such as the familiar one that notice of claim must be served on the municipality sometime before suit can be commenced thereon. It is based rather on the consideration that it would be inconvenient and burdensome for the officials of a municipality to seek its creditors and tender payment of their claims, and also that it would be oppressive and unjust to permit creditors of a municipality with good credit to turn claims into investments through omitting to present them and then collecting interest thereon."

In our state in the case of *Naar* v. *City of Trenton,* 42 *N. J. L.* 500, Mr. Justice Dixon held (at *p.* 502):

"* * * Further, payment of the original debt being demanded and refused, interest would then begin to accrue thereon, under our law, at six per cent. per annum."

There is no evidence of any agreement between the parties concerning the interest and therefore the law, as stated, must govern. The bills were presented on March 18th, 1932.

A peremptory writ shall be allowed and it shall provide for interest as of March 18th, 1932.