**BOROUGH OF FORT LEE, N. J., et al. v. UNITED STATES ex rel. BARKER et al.**

**UNITED STATES ex rel. BARKER et al. v. BOROUGH OF FORT LEE, N. J., et al.**

**SAME v. BROSNAHAN, Borough Tax Collector, et al.**

**Nos. 6726, 6727, 6840.**

Circuit Court of Appeals, Third Circuit.

May 6, 1939.

E. J. Dimock, of New York City, for appellants in No. 6726.

Arthur T. Vanderbilt, of Newark, N. J. (Frederick W. Hall, of Newark, N. J., and David M. Wood and John B. Dawson, both of New York City, of counsel), for relators.

Lawrence A. Cavinato, of Fort Lee, N. J., William A. Stevens, of Red Bank, N. J., and E. J. Dimock, of New York City., for respondents-appellees.

Before BIGGS, MARIS, and BUF-FINGTON, Circuit Judges.

MARIS, Circuit Judge.

The relators, Edwin H. Barker and others, recovered in the District Court for the District of New Jersey a judgment for $575,924.66 and costs against the Borough of Fort Lee in an action brought upon certain overdue bonds and coupons issued by the borough and held by the relators. Thereafter relators caused an execution to be issued on the judgment and served on the borough. It was returned nulla bona and was thereupon served upon the tax-assessing officials of the borough and of the county in which it is situated. Those officers having failed to add to the tax levy an amount sufficient to pay the judgment, the relators on March 12, 1937, obtained from the court below a rule to

show cause why a peremptory writ of mandamus should not issue commanding those officials (the appellants in No. 6726) to levy, collect and pay over to the United States Marshal a tax sufficient to satisfy the judgment.

On the return day of the rule Walter R. Darby, David T. Wilentz and J. H. Thayer Martin, constituting the Municipal Finance Commission, a state agency created by New Jersey law for the supervision of financially embarrassed municipalities of the state, made application for leave to intervene in the proceeding, averring that they had been functioning in the borough since June, 1933. Their application was denied by the court below. At the hearings on the rule held in April and November, 1937, the following situation was disclosed:

The Borough of Fort Lee is situated in Bergen County, New Jersey, on the Hudson River, at the western end of the George Washington Bridge. Its population in 1930 was 8,759. There is a coterminus school district.

In 1933 the borough and school district defaulted in the payment of principal and interest of their obligations. On January 1, 1938, the principal of borough and school district obligations was in default to the amount of $3,187,200 and interest to the amount of $1,105,475.25, or a total of $4,292,675.25. In addition there were unmatured bonds amounting to $918,741, making a total debt on that date of $5,211,416.25. The assessed valuation of the taxable property in the borough in 1937 was $13,095,050 and it had been approximately this amount in each of the preceding years since 1931.

A large part of this indebtedness had been incurred for improvements to vacant property in the borough made in the hope that development of the vacant property would follow which would increase its value sufficiently to enable it to yield the taxes necessary to pay the debt. The taxes assessed upon a large part of this vacant property have become delinquent and tax liens have accumulated, many of which have been foreclosed by the borough. On November 8, 1937, the borough held tax title liens amounting to $2,809,589.47 and property bought in at foreclosure sales representing tax title liens of $517,335.32.

During the period from 1932 to 1937 the total tax levy had declined from $856,872.30 in 1932 to $606,339.10 in 1937, and during that period the tax rate had declined from 5.98 to 4.38. The amount of the tax levy actually collected in the current year had remained substantially constant, however, during that period at approximately 50%. In the years 1933 to 1937 inclusive appropriations aggregating $1,076,653.61 were made out of the annual tax levies for debt service by the borough. No payments to bondholders were made after the fall of 1933, however, due in large part to the fact that other appropriations included in the budgets were given priority out of the tax funds actually collected. On November 1, 1937, the borough had on hand the sum of $329,255.78 in cash.

In 1933 the Municipal Finance Commission was called upon to function in the borough pursuant to Chapter 340 of the New Jersey Municipal Finance Commission Act, New Jersey Laws of 1931, as amended, N.J.S.A. 52:27–1 et seq. Thereafter a group of New Jersey bondholders commenced mandamus proceedings in the Supreme Court of that state pursuant to that chapter to compel the assessment, levy and collection of taxes. In that proceeding which was brought for the benefit of all creditors of the borough the Supreme Court determined that the utmost amount which could be included in the 1936 budget and tax levy of the borough for debt service was $132,000. In the same proceeding the court later fixed the amount for 1937 at $156,560. The amount fixed for 1937 was determined with the consent of the present relators in connection with a proposed refunding plan which had been approved by the borough. After the writ was issued by the Supreme Court the borough withdrew its approval and the present relators shortly thereafter filed their petition for a writ of peremptory mandamus in the present proceeding.

On December 13, 1937, the court below issued the writ directing a series of fifteen annual tax levies beginning with the year 1938 sufficient for the payment of relators' judgment. The borough and its officials have appealed from the order issuing the writ, and the members of the Municipal Finance Commission have appealed from the order denying their petition for intervention. This appeal has been designated No. 6726 on our docket. From the order issuing the writ the relators have also appealed, objecting to its terms. Their appeal is No. 6727.

The writ of peremptory mandamus issued by the court below fixed the tax levy

to be made for the year 1938 at $37,920, and this sum was included in the tax ordinance for that year. The writ commanded respondent Thomas Brosnahan, the Tax Collector of the Borough, to "collect said tax in each of said years, at the same time and in the same manner, in lawful money of the United States of America only, and under the same conditions, restrictions and regulations as taxes for other purposes are required to be collected, and to pay, on June 5th and December 5th of each year, all of the proceeds of said tax levies, plus Marshal's fees thereon, to the United States Marshal for the District of New Jersey * * *."

On May 16, 1938, the court below directed the Tax Collector and the borough to segregate and impound the collections of the tax required to be levied by the writ until the date the first installment was payable to the Marshal and to use the same for no other purpose than prescribed by the writ. Pursuant to this order the amounts collected were segregated and kept separate, the amount being computed out of each payment of tax received by taking therefrom the proportion of the payment represented by the ratio which the mandamus tax levy of $37,920 bore to the total levy. The proceeds thus computed and segregated amounted on June 4, 1938, to $10,297.25. On June 6th the Marshal made demand on the respondent Tax Collector for these proceeds. The latter tendered him a borough check in the above amount which, however, was not countersigned by the auditor for the Municipal Finance Commission and consequently could not be honored. The relators there-

upon obtained a rule to show cause why the respondent Collector should not be held to be in contempt of court, which after hearing was discharged by the court below by an order entered July 7, 1938. From this order the relators have appealed in No. 6840.

As will be seen from the foregoing fact recital this case presents a picture of the serious financial embarrassment of a municipality. It involves the character and extent of the remedies available to judgment creditors for the collection of their claims. It is undisputed that the relators' remedies are only those provided by New Jersey law. The determination of the questions raised by these appeals accordingly depends upon that law. We, therefore, turn to its consideration.

By the supplement to the "Act respecting executions" approved March 27, 1878, P.L. p. 182, 2 Comp.St.1910, p. 2255,[1] it was provided that when an execution issued upon a judgment against a borough is returned unsatisfied a copy of the same shall be served not only on the collector of the borough, but also upon the assessor thereof and upon receipt of the copy it shall be the duty of the latter official "to assess and levy, in addition to the regular taxes, the amount due upon the said execution, with interest to the time when the same shall be paid to the officer serving such process, upon all the property within such * * * borough * * * ; and this tax shall be assessed and collected at the same time and in the same manner and under the same conditions, restrictions and regulations as taxes for other purposes are required to be assessed and collected in such * * * borough * *,

[1] "Sec. 1. That when any execution shall be issued against any town, township, borough or other municipal corporation of this state, by any court authorized to issue the same, upon any judgment against such town, township, borough or municipal corporation, whether upon a judgment recovered before the passage of this act or subsequent thereto, and there shall be no property belonging to such town, township, borough or other municipal corporation sufficient to satisfy the same whereon to levy, then the officer authorized to execute such process shall serve a copy of the same, not only on the collector of such town, township, borough or other municipal corporation, as is now required by law, but also upon the assessor thereof, who is by law required to assess the taxes in and for such town, township, borough or municipal corporation; and upon receipt of such copy of execution it shall be the duty of such assessor to assess and levy, in addition to the regular taxes, the amount due upon the said execution, with interest to the time when the same shall be paid to the officer serving such process, upon all the property within such town, township, borough, or other municipal corporation; and this tax shall be assessed and collected at the same time and in the same manner and under the same conditions, restrictions and regulations as taxes for other purposes are required to be assessed and collected in such town, township, borough or municipal corporation, and when collected shall be paid over to the officer serving the said process."

and when collected shall be paid over to the officer serving the said process." From the time of its passage this act provided the normal remedy of a judgment creditor for the collection of his debt from a municipal corporation and it was early held by the New Jersey courts that if the procedure set forth in the act was not followed by the municipal officials the judgment creditor was entitled as of right to a writ of mandamus to compel them to perform their duty thereunder. Rahway v. State ex rel. Munday, 44 N.J.L. 395. Indeed, it has come to be recognized that a writ of execution against a municipality is not issued to seize and sell its property but merely for the purpose of laying a foundation for a mandamus proceeding, the latter being the judgment creditor's only remedy. Township Committee of Township of Piscataway v. First Nat. Bank of Dunellen, 111 N.J.L. 412, 168 A. 757, 90 A.L.R. 423; Hourigan v. North Bergen Township, 113 N.J.L. 143, 172 A. 193, 785.

■ It is true that this court in City of Asbury Park, N. J., v. Christmas, 3 Cir., 78 F.2d 1003, held that the issuance of a writ of mandamus in these circumstances was discretionary. That decision was filed, however, before the Supreme Court in Erie R. Co. v. Tompkins, 302 U.S. 671, 58 S.Ct. 50, 82 L.Ed. 518, had made clear that the federal courts in cases of this kind involving state law are bound to follow the state decisions. Those decisions, as we have pointed out, clearly hold the writ of mandamus under the circumstances here present to be a writ of right. Consequently City of Asbury Park, N. J., v. Christmas, supra, may no longer be regarded as controlling.

■ It is well settled in New Jersey that if upon a rule to show cause both parties are fully heard and there are, as here, no disputed questions of fact involved, a writ of mandamus peremptory in form may issue. Kelly v. Paterson, 35 N.J.L. 196; Palmer, Ex'r v. Board of Chosen Freeholders of Essex County, 77 N.J.L. 143, 71 A. 285; Hudson County National Bank v. Bayonne, 113 N.J.L. 258, 174 A. 241. It follows that the court below did not err in following that procedure in this case.

■ The financial distress of the municipality and the confusion which a writ of mandamus may work in its fiscal affairs is not a bar to the granting of the writ. As Mr. Justice Heher said in Hourigan v. North Bergen Township, supra, 113 N.J.L. at page 146, 172 A. at page 195:

"That the granting of a writ of mandamus, in a case such as this, will work confusion in the financial affairs of the municipality does not justify the denial of the application. It is not a discretionary matter. Mandamus is the only remedy of the creditor for the enforcement of his contract. This is a well-established doctrine. Lyon v. City of Elizabeth, 43 N.J.L. 158; [Township Committee of Township of] Piscataway v. First National Bank of Dunellen, 111 N.J.L. 412, 168 A. 757 [90 A.L.R. 423]. In Rahway v. Munday, 44 N.J.L. 395, 418, Chief Justice Beasley, speaking for this court, held that the writ of mandamus, in such circumstances, is a remedy for enforcing a contract, and that the statute providing that, when an execution upon such judgment shall have been served upon the assessor of the municipality, it shall be his duty to assess and levy, in addition to regular taxes, the amount due upon the execution, vests in the judgment creditor a right to have his debt paid from the source specified, that the statute makes no allowance for the pecuniary embarrassments or the insolvency of the corporation, and that the mandate of the act is that, in every case and in all situations, upon the requisite proceedings being taken, the sum due must be assessed and collected. The consequence of a contrary rule would be that, in the exercise of discretion, the Supreme Court could withhold the only remedy of the creditor for the enforcement of his contract. As Chief Justice Beasley pertinently said: 'If a judgment should be obtained in an inferior court, and such court should refuse, without legal reason, to issue an execution upon it, the mandamus compelling such action would be as much a remedy for enforcing such contract as would be either the judgment or final process.'"

By Section 505 of the Tax Act of 1918, ch. 236, Laws of N. J., P.L. page 865, N.J. S.A. 54:4-42 to 54:4-44,[2] it was provided.

---

[2] "The municipal clerk or other proper officer of each taxing district shall, on or before the first day of March in each year, transmit to the county board of taxation a copy of the annual taxing ordinance or resolution, or other evidence showing the amount to be raised by taxation for the purposes of the taxing district. When any execution shall be issued upon judgment against any taxing.

that the proper officer of each taxing district should annually transmit to the county board of taxation a copy of its annual taxing ordinance. It was further provided that when any execution should be issued upon a judgment against any such taxing district and should remain unsatisfied a copy of the execution should be served upon the county board of taxation whose duty it should then be "to add the amount due upon said execution, with interest to the first day of June following, to the amounts certified to it to be raised by taxation in said taxing district, and the amount of said execution and interest shall thereupon also be raised by taxation in said taxing district and paid by the collector thereof on or before the fifth day of June following." The act contained the proviso that if the execution is served upon the county board after it has determined and fixed the tax rate for the year the amount of the execution shall be included by the board in the amount to be raised by taxation in the following year "unless the amount of such execution and interest shall have been included in the taxing ordinance or resolution with the other amounts to be raised by taxation in said taxing district, or unless the execution shall have been satisfied otherwise."

Under the act just referred to the county board of taxation is the body which fixes the tax rate in each borough and other taxing district in the county and levies the taxes therein. Under the system of taxation followed in New Jersey but one tax is levied which includes the amounts to be raised by taxation for state, county and school purposes, as well as for the general expenses and debt service of the borough or other taxing district involved. It will thus be seen that the effect of Section 505 of the Tax Act was merely to supplement the Act of 1878 by authorizing the service of an execution against a municipality upon the county board of taxation in the county in which it is situated and directing that board to make provision for the execution in the tax levy in substantially the same way as was required of the local assessor by the Act of 1878.

In the case before us the relators served their execution upon the borough collector and assessor and upon the county board of taxation, who failed to add the amount thereof to the tax levy in the borough. It would, therefore, follow from what has been said that the relators were entitled to the writ of peremptory mandamus which the court below granted them unless their right to such a remedy has been validly withdrawn by subsequent legislation. The respondents strongly urge that the right to mandamus has been thus withdrawn and in support of their argument they point to the provisions of the Municipal Finance Commission Act, New Jersey Laws of 1933, c. 330, N.J.S.A. 52:27-1 et seq. This act provides that when a municipality has defaulted in the payment of bonds and that fact has been established by a proceeding in the Supreme Court of New Jersey, the Municipal Finance Commission of the state shall proceed to function in the municipality and exercise therein the powers and duties prescribed by the act. Among other things the Commission is authorized to appoint an auditor to function in the municipality, by whom all warrants or checks for the withdrawal of funds of the municipality must be countersigned. Section 33 of the act is the portion particularly relied on by the respondents. Its provisions are set out below.[3] Pursuant to those provisions

---

district, and there shall be found no property sufficient to satisfy the same by levy, the officer shall serve a copy of his execution upon the county board of taxation having jurisdiction over said taxing district, and it shall be the duty of the county board of taxation to add the amount due upon said execution, with interest to the first day of June following, to the amounts certified to it to be raised by taxation in said taxing district, and the amount of said execution and interest shall thereupon also be raised by taxation in said taxing district and paid by the collector thereof on or before the fifth day of June following: provided, however, that if the copy of said execution shall not be served upon the county board of taxation before said board shall have determined and fixed the rate for said taxing district for the year, then the amount shall be included by said board in the amount to be raised by taxation in the next following year, and the interest shall be calculated to the first day of June of such year, unless the amount of such execution and interest shall have been included in the taxing ordinance or resolution with the other amounts to be raised by taxation in said taxing district, or unless the execution shall have been satisfied otherwise.

[3] N.J.S.A. 52:27-33. "Whenever the commission shall function in any municipality and so long as it shall continue so to do, no action or proceeding of any

a mandamus proceeding has been brought, as we have said, in the Supreme Court of New Jersey, against the Borough of Fort Lee, in which proceeding that court has fixed the amount of money to be raised by taxation for the payment of the indebtedness of the borough.

■ If the Municipal Finance Commission Act applies to the claims of the relators here, it must be held that they are relegated for their remedy to the omnibus mandamus proceeding pending in the State Supreme Court and are not entitled to the writ of mandamus which the court below issued. They argue, however, that this act is unconstitutional if retroactively applied to their claims since it deprives them of the means for the enforcement of their contracts in violation of Article I, Section 10, of the Constitution and of the Fourteenth Amendment, U.S.C.A. This question has had the consideration of the Court of Errors and Appeals of New Jersey and of a special federal district court in that state consisting of three judges. The Court of Errors and Appeals in Hourigan v. North Bergen Township, supra, came to the conclusion by a vote of 7 to 6 that the statute as retroactively applied to pre-existing debts was not unconstitutional. On the other hand the special district court in Sovereign Camp, W. O. W., v. Wilentz, D.C., 23 F.Supp. 23; appeal dismissed, 59 S.Ct. 707, 83 L.Ed. ——, unanimously concluded that the act was unconstitutional and void insofar as it affected the rights of a prior creditor to enforce its judgment in the federal district court in accordance with the provisions of the laws of New Jersey in force at the time the bonds upon which its judgment was obtained were issued.

In Walker v. Whitehead, 16 Wall. 314, 317, 21 L.Ed. 357, it was said: "Nothing is more material to the obligation of a contract than the means of its enforcement. The ideas of validity and remedy are inseparable, and both are parts of the obligation which is guaranteed by the Constitution against impairment." In numerous cases the Supreme Court has held changes in remedies to be of such a character as to interfere with substantial rights. Wilmington & Weldon R. Co. v. King, 91 U.S. 3, 23 L.Ed. 186; Memphis v. United States ex rel. Brown, 97 U.S. 293, 24 L.Ed. 920; Virginia Coupon Cases, Poindexter v. Greenhow, 114 U.S. 269, 270, 298, 299, 5 S.Ct. 903, 962, 29 L.Ed. 185; Effinger v. Kenney, 115 U.S. 566, 6 S.Ct. 179, 29 L.Ed. 495; Fisk v. Jefferson Police Jury, 116 U.S. 131, 6 S.Ct. 329, 29 L.Ed. 587; Bradley v. Lightcap, 195 U.S. 1, 24 S.Ct. 748, 49 L.Ed. 65; Bank of Minden v. Clement, 256 U.S. 126, 41 S.Ct. 408, 65 L.Ed. 857; Worthen Co. ex rel. Board of

---

kind, either direct or ancillary, by way of mandamus or otherwise, shall be brought against such municipality or any public officers for the assessment, levy or collection of taxes by or for such municipality and any and all actions or proceedings therefor shall be and they hereby are stayed; except that first, the supreme court or a justice thereof, after notice to the commission, may authorize one or more creditors of such municipality to bring and maintain an action or proceeding therefor in the supreme court, which shall be brought for the benefit of themselves and all other creditors of such municipality and in which all other creditors of such municipality shall have the right to intervene and assert their claim and in which all other creditors of such municipality may, and the commission shall, be made parties in such manner and upon such notice as the supreme court shall approve; and except that, second, the commission may bring and maintain an action or actions by way of mandamus or by any other appropriate proceeding or proceedings for the assessment, levy or collection of taxes by such municipality for the payment of

principal or interest of the indebtedness of the municipality found to be outstanding as provided in section 52:27–14 of this title.

"Without limiting its power otherwise to direct by mandamus the assessment, levy or collection of taxes, the supreme court in any such proceeding may, to the extent which it shall deem just and equitable, afford to the holders collectively of any due and unpaid claims against a municipality any remedy which might be afforded under any other law to any individual creditor in any mandamus proceeding for the assessment, levy or collection of taxes, to the same extent as if there had been an entry of judgment in their favor, issuance of execution and return thereof unsatisfied, service thereof upon public officials and performance of any and all other conditions precedent to the affording of such relief by mandamus under such other law; provided, that the court be first satisfied from proof submitted by affidavit or otherwise that the claims for the enforcement of which such remedy is sought are claims upon which a judgment could be obtained."

Com'rs of Street Imp. Dist. No. 513 of Littlerock, Ark., v. Kavanaugh, 295 U.S. 56, 55 S.Ct. 555, 79 L.Ed. 1298, 97 A.L.R. 905.

In Worthen Co. v. Kavanaugh, supra, 295 U.S. at page 60, 55 S.Ct. at page 556, 79 L.Ed. 1298, 97 A.L.R. 905, Mr. Justice Cardozo said:

"To know the obligation of a contract we look to the laws in force at its making. Sturges v. Crowninshield, 4 Wheat. 122, 197, 4 L.Ed. 529; Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 429, 54 S. Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481. In the books there is much talk about distinctions between changes of the substance of the contract and changes of the remedy. Von Hoffman v. Quincy, 4 Wall. 535, 18 L. Ed. 403; Louisiana ex rel. Ranger v. New Orleans, 102 U.S. 203, 26 L.Ed. 132; Barnitz v. Beverly, 163 U.S. 118, 16 S.Ct. 1042, 41 L.Ed. 93; cf. Home Building & Loan Ass'n v. Blaisdell, supra, 290 U.S. at pages 429, 434, 54 S.Ct. 231 [78 L.Ed. 413, 88 A.L.R. 1481], where the cases are assembled. The dividing line is at times obscure. There is no need for the purposes of this case to plot it on the legal map. Not even changes of the remedy may be pressed so far as to cut down the security of a mortgage without moderation or reason or in a spirit of oppression. Even when the public welfare is invoked as an excuse, these bounds must be respected. W. B. Worthen Co. v. Thomas, 292 U.S. 426, 433, 54 S.Ct. 816, 78 L.Ed. 1344, 93 A.L.R. 173, distinguishing Home Building & Loan Ass'n v. Blaisdell, supra. We state the outermost limits only. In stating them we do not exclude the possibility that the bounds are even narrower. The case does not call for definition more precise."

The rule was well stated by Mr. Justice Roberts in Richmond Mortgage & Loan Corp. v. Wachovia Bank & Trust Co., 300 U.S. 124, 128, 57 S.Ct. 338, 339, 81 L.Ed. 552, 108 A.L.R. 886, as follows:

"Although admitting that the challenged legislation affects only a remedy for enforcement of the contract, the appellant urges that the alteration is so substantial as to impair the obligation of the contract. The applicable principle is not in dispute. The Legislature may modify, limit, or alter the remedy for enforcement of a contract without impairing its obligation, but in so doing, it may not deny all remedy or so circumscribe the existing remedy with conditions and restrictions as seriously to impair the value of the right. The particular remedy existing at the date of the contract may be altogether abrogated if another equally effective for the enforcement of the obligation remains or is substituted for the one taken away. The matter in dispute is whether the questioned enactment falls beyond the boundary of permissible regulation of the remedy for enforcement of the appellant's contract."

In the case before us we agree with the district court that the remedy substituted by the Municipal Finance Commission Act for that provided by the Acts of 1878 and 1918 is not a reasonable equivalent, but on the contrary seriously and substantially impairs the value of the relators' bonds. Under the former law the relators had the right by peremptory mandamus to compel the addition to the municipal tax levy of a sum sufficient to pay their judgments. The Municipal Finance Commission Act substitutes for this unqualified right to compel payment one which is substantially circumscribed and far less effective, namely, the right to receive their pro rata share of such sum as the Supreme Court of New Jersey may in its discretion, in a mandamus proceeding brought for the benefit of all creditors, deem it just and equitable to add to the municipal tax levy. It is apparent that the sum so fixed may be entirely inadequate. We accordingly conclude that the act, as sought to be applied to the claims of the relators in this case, impairs the obligation of their contracts in violation of the Constitution.

The district court, after considering the evidence, ordered the issuance of a writ directing the raising of the necessary funds to pay the relators' judgment over a period of fifteen years. Both relators and respondents attack this feature of the order. On the one hand the period is said to be entirely too long and on the other it is argued that it is oppressively short. The matter was one for the sound discretion of the court below, however. United States ex rel. Metzger v. City of Vero Beach, 5 Cir., 90 F.2d 70. After careful consideration of the record we are satisfied that this discretion was not abused. Indeed the fact that the parties on one side strongly urge that the payment was spread over too long a period while those on the other side argue with equal vehemence that much more time should

have been given seems to us a very persuasive indication that the period fixed by the court was a reasonable mean between their opposing views.

 Having determined that the court below properly issued its writ of mandamus to compel the respondents to perform the duties enjoined upon them by the Acts of 1878 and 1918 it remains for us to delimit those duties. The relators urge in their appeal from the refusal of the court below to commit the respondent tax collector for contempt that the acts in question require that a special tax be levied for the payment of their judgment the proceeds of which must be separately collected, segregated in the hands of the Collector and paid over to the Marshal. On the other hand the respondents contend that the amount of the additional tax is to be added to the ordinary tax levy and collected as a part of it without segregation and that the relators are not entitled to be paid anything until after sufficient money has been collected from the entire tax levy to pay the amounts due for state, county and school purposes and for the general operating expenses of the borough. Pursuant to the mandamus issued by the court below the respondents added the amount directed by the court to the 1937 tax levy and proceeded to collect the whole levy without segregation. Pending the determination of the construction to be placed upon the acts, however, the authorities, pursuant to an order of the court below, have deducted from each tax payment received a portion based upon the ratio between the tax required to be levied by the mandamus and the total tax levy in the borough and these sums have been segregated by the Collector.

Under the system of taxation employed in New Jersey the entire tax levy for all purposes is collected by the tax collector of each municipal subdivision. Upon the taxes thus collected by the Collector of the borough or other municipality the amounts due the state, county and school district have a prior lien. Gabler v. Elizabeth, 42 N.J.L. 79; State ex rel. Board of Water Commissioners of City of Rahway v. Brewster, 42 N.J.L. 125; Booth v. Parnell, 172 A. 50, 12 N.J.Misc. 413. This is for the reason, as pointed out in Booth v. Parnell, supra, that since neither the state nor the county is given the power to collect taxes directly from the taxpayer both the state and county are entitled to a first claim upon the funds actually collected in order that their credits and functions be not impaired or measurably destroyed. Likewise the operating expenses of the municipality itself are to be paid before the claims of holders of municipal bonds. Township Committee of Township of Piscataway v. First Nat. Bank of Dunellen, supra. As the court said in the case just cited [111 N.J.L. 412, 168 A. 758]: "The safety and health of the citizen are of prime importance, and neither can be endangered because a creditor wants his due."

 We think it clear that the Acts of 1878 and 1918 do not change this policy of the state so as to provide for a special separate tax for the payment of a municipal judgment creditor. On the contrary their effect is merely to direct the addition to the tax levy of an amount sufficient to pay the judgment so that when and if the levy is collected in full there will be a fund to meet the claim. The Act of 1878 must be construed in the light of the law which it supplanted. That law provided that the judgment creditor should be paid out of the first monies of the municipality that might come into the treasurer's hands. This had been held, however, to mean only monies appropriated to pay his claim or devoted to the payment of a class of claims to which he properly belonged or unappropriated monies. The result was that the remedy given was more apparent than real.

In this situation the Act of 1878, as the Supreme Court of New Jersey pointed out in Gabler v. Elizabeth, 42 N.J.L. 79, 86, "imparted substance and life to what was before, without judicial aid first had to provide a fund with which to pay, little better than the mere shadow of a remedy." It gave to the judgment creditor a place in the tax levy and appropriated to his claim a portion of the fund to be collected thereunder if and when collected. We think it clear that it did not direct the setting up of a special tax levy for his benefit which would have given him a preferred status after judgment which he did not enjoy before. It follows that the respondents were not required under the writ issued in this case to levy a separate tax or to segregate the proceeds thereof but merely to add to the tax levy for other purposes the amounts specified in the writ and to pay those amounts over to the Marshal after sufficient of the levy has been col-

lected to pay out those sums which are claims upon it prior to the claims of creditors of the borough.

The right of the Municipal Finance Commission to intervene remains for consideration. The court below refused the Commission this right, we think erroneously. The Commission was functioning in the borough and supervising its financial affairs. Before any funds of the borough could be paid out the checks or vouchers must be countersigned by the Commission's auditor. Under these circumstances the ability of the respondents to comply with the writ may depend upon the co-operation of the Municipal Finance Commission. Its members should, therefore, have been permitted to intervene as parties respondent in order that the writ granted the relators may be made fully effective.

The order of the court below refusing the members of the Municipal Finance Commission leave to intervene is reversed, and the court is directed to grant their petition. The orders awarding the peremptory writ of mandamus and discharging the rule to show cause why the respondent Thomas Brosnahan should not be attached for contempt are affirmed.